Pennsylvania Turnpike Commission, Appellant, *v.*
Smith et al., Appellants.

356

Argued May 23, 1944. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and HUGHES, JJ.

*Walter B. Gibbons,* with him *John D. Faller, Stanley C. Fellows, N. L. Wymard,* Deputy Attorney General, and *James H. Duff,* Attorney General, for Turnpike Commission.

*Charles A. Wolfe,* with him *John Y. Scott, John H. Fertig, Robert P. Smith, Montgomery, McCracken, Walker & Rhoads,* and *Smith, Ristig & Smith,* for contractors.

OPINION BY MR. JUSTICE HUGHES, September 25, 1944:

The Pennsylvania Turnpike Commission, on April 17, 1939, advertised for bids on the construction of a certain section of their turnpike, which bids were due in the office of the Turnpike Commission on April 28, 1939. The York Engineering & Construction Company obtained a copy of the plans and specifications and made a surface examination of that section of the turnpike, which was as complete an examination as could be made in the short period of time granted in which to file bids.

The information contained in the plans and specifications indicated the material to be excavated would consist principally of loose earth and approximately 50,000 cubic yards of limestone, visible at the east end of the section. The York Engineering & Construction Company was awarded the contract and entered into a formal agreement to perform the work. On the plans and blueprints were set forth the estimated amounts of grading quantities.\* In the contract it is set forth under Instructions to Bidders, "Each bidder shall familiarize himself with all of the attached forms, Instructions, General Conditions, Specifications, Drawings, etc., as he will be held responsible to fully comply therewith. Each bidder must visit the site and acqaint himself with conditions affecting the work." And in Section 36 of the contract it is provided: "The bidder's attention is called to the fact that the estimate of quantities of work to be done and materials to be furnished under these specifications, as shown on the proposal form, is approximate and is given only as a basis of calculation upon which the award of the contract is to be made. The Commission does not assume any responsibility that the quantities shall obtain strictly in the construction of the project nor shall

---

\* On sheet 2 of the plans and blue prints the following appeared:

"The following information on the estimated amounts of grading quantities has been used by the Pennsylvania Turnpike Commission on its preliminary estimate for this project and shall not be taken or used as a waiver of the provisions of the specifications:

| Sta. to Sta. | Length | Cut | Waste | Fill Net Cut | Fill + Shrink | Exc. Cut | Exc. Fill | Class 1 Excav. | Class 2 Excav. | Top Soil Reserve |
|---|---|---|---|---|---|---|---|---|---|---|
| 1054+50 | | | | | | | | | | |
| 1098+50 | 4400.00 | 122918 | 464 | 122454 | 127365 | | 4911 | 122075 | 843 | 2968 |
| 1098+50 | | | | | | | | | | |
| 1145+50 | 4700.00 | 135608 | 232 | 135376 | 139127 | | 3751 | 133784 | 1824 | 3216 |
| 1145+50 | | | | | | | | | | |
| 1185+50 | 3950.00 | 11290 | 2469 | 108821 | 107969 | 852 | | 107979 | 3311 | 2582 |
| | 13050.00 | 369816 | 3165 | 366651 | 374461 | | 8662 | 363838 | 5978 | 8766 |

'Grading analysis not furnished for this project.' "

the contractor plead misunderstanding or deception because of such estimate of quantities or of the character of the work, location or other conditions pertaining thereto. The Commission reserves the right to increase or diminish any or all of the above mentioned quantities of work or to omit any of them, as it may deem necessary." And in Section 37 it is provided: "Wherever subsurface materials information is indicated on the drawings it is understood that it was obtained in the usual manner and with reasonable care, and the location, depths and the character of the material have been recorded in good faith. There is no expressed or implied agreement that the depths or the character of the material have been correctly indicated and bidders should take into account the possibility that conditions affecting the cost or quantities of work to be done may differ from those indicated."

Owing to the magnitude of the undertaking, four to eight weeks would have been required for a complete subsurface investigation and the engineering company was, therefore, compelled to rely on the plans as to subsurface conditions. These plans showed a factor of fill plus shrink, which indicated the character of the material to be excavated was largely loose earth, as only loose earth shrinks when mechanically moved from one place to another. The engineers for the Turnpike Commission had investigated the subsurface conditions of this section and found it to be predominantly rock, which should have shown on the plans as fill plus swell. After the contractor commenced excavating, it was discovered that the subsurface, at the point of excavation, was limestone rock containing clay seams, and this condition prevailed at each subsequent cut into the subsurface. The additional expense of working this unanticipated type of subsurface material was much greater and, on account of the swell in the waste excavation, also increased its cost of removal. The arbitrators found that the contractor could not, with certainty, determine the extent of the misrepresentations so as to justify stopping

the work prior to its completion. The contractor filed a claim with the Turnpike Commission, calling their attention to the errors in the specifications as well as advising the Commission that there was not sufficient time between the bid advertisement and the opening of the bids to make a subsurface investigation, and that in preparing its bids the contractor had relied on the subsurface information furnished with the plans. Under the contract, the matters in dispute were referred to the Board of Arbitrators. There was no dispute relative to quantities, but pertained entirely to the question of the subsurface material, the contractor claiming it was misrepresented on the plan. The Board of Arbitrators found the plans furnished by the Turnpike Commission misrepresented the character of the subsurface material, which amounted to a breach of contract, and awarded the appellee $149,870.84, with interest at 6% from and including June 1, 1940. A petition was filed on behalf of the Turnpike Commission to vacate, modify or correct the award of the arbitrators and, after hearing, the court below affirmed the award, but disallowed interest thereon.

The Act of April 25, 1927, P. L. 381, 5 PS 306, under which this proceeding was instituted, places an award on the same footing as the verdict of a jury; mistakes of law may be rectified on appeal; *Philadelphia Housing Authority v. Turner Construction Company*, 343 Pa. 512, 23 A.2d 426; *Navarro Corporation v. Pittsburgh School District*, 344 Pa. 429, 432, 25 A.2d 808; and on a motion to vacate the award of the arbitrators, every inference of fact must be drawn in favor of the party having the award. The findings which we have already outlined, which findings were found by the court below to be supported by substantial evidence, raise the question, Was the information given in the plans and specifications such a misrepresentation as to make the Turnpike Commission liable for the additional cost of excavation?

In *Hollerbach v. United States*, 233 U. S. 165, 58 Law. Ed. 898, the specifications stated that the dam was

backed with broken stone, sawdust and sediment, whereas it was actually sediment for seven feet and below that a cribwork of logs filled with stones. The contract contained cautionary provisions requiring the claimants to inform themselves of the condition of the backing of the dam. It was held: "We think this positive statement of the specifications must be taken as true and binding upon the government, and that upon it, rather than upon the claimants, must fall the loss resulting from such mistaken representations. We think it would be going quite too far to interpret the general language of the other paragraphs as requiring independent investigation of facts which the specifications furnished by the government as a basis of the contract left in no doubt. If the government wished to leave the matter open to the independent investigation of the claimants, it might easily have omitted the specification as to the character of the filling back of the dam. In its positive assertion of the nature of this much of the work it made a representation upon which the claimants had a right to rely without an investigation to prove its falsity." In *Christie v. United States*, 237 U. S. 234, 59 Law. Ed. 933, where the government submitted boring sheets to bidders for the construction of locks and dams on an alluvial stream, the time not being sufficient for the contractors to make their own borings, and the information furnished was relied upon, although the specifications provided that bidders must inform and satisfy themselves as to the nature of the material, it was said: "There were representations made which were relied upon by claimants, and properly relied upon by them, as they were positive. . . . Besides, it was admitted at the argument that time did not permit borings to be made by claimants. We think it was error, therefore, to have disallowed the damage resulting therefrom." In *Funk et al. v. School District of Abington Township*, 321 Pa. 435, 184 A. 659, we held: "The specifications stating generally subsurface conditions were representations upon which appellees were entitled to rely with-

out further investigation as to their truth or falsity" and cited the preceding United States cases, as well as *U. S. v. Atlantic Dredging Co.*, 253 U. S. 1, which further indicated that declarations in government specifications that no guaranty as to the accuracy of description is intended, and the admonition to bidders that they must decide as to the character of the material to be dredged and make their bids accordingly, does not prevent the contractor from relying upon the government specifications and maps as to the character of the material to be encountered. In *O'Neill Construction Company, Inc., v. Philadelphia*, 335 Pa. 359, 6 A. 2d 525, this court reviewed *Hollerbach v. U. S.*, supra, *Christie v. U. S.*, supra, and *U. S. v. Atlantic Dredging Co.*, supra, as to their self-exoneration clauses, and states: "There were self-exonerating clauses of substantially similar phraseology involved in the litigation in *Passaic Valley Sewerage Commissioners v. Holbrook, Cabot & Rollins Corporation*, 6 F. (2d) 721; *Pitt Construction Co. v. City of Alliance, Ohio*, 12 F. (2d) 28; *Jackson v. State*, 205 N. Y. Supp. 658, affirmed 241 N. Y. 563; *Ganley Bros. Inc. v. Butler Bros. Building Co.*, 170 Minn. 373, 212 N. W. 602. In all of these cases it was held that such provisions afforded no shield against conscious misrepresentation or anything but mere inaccuracies and innocent mistakes." It then stated: "It is unnecessary in the present case to determine—in the absence of precedents in our own jurisdiction—to what extent the rule laid down in these authorities should be accepted as the law of Pennsylvania, because the facts here are different." The opinion continues: "It was further stated that 'In no event is this information to be considered as a part of the contract.' Since the plans were, by reference, a part of the contract, this statement was equivalent to notice that the information furnished by the borings was not to be considered as a part of the *plans*. In effect, therefore, the borings were as much obliterated from the plans as if physically erased, and their appearance thereon was relegated to the status of private memo-

randa for the City's own purpose." This court having recognized, with approval, the right to a recovery in this type of case, where the misrepresentation was substantial and not a mere inaccuracy or innocent mistake, it would seem clear that the Turnpike Commission worked a substantial constructive fraud upon the contractor in the inaccurate information furnished in this case and on which the contractor had, under the circumstances, a right to rely, and did rely. As was said in Williston on Contracts, Vol. 3, §811, page 2278, such "fraud in the inception of the agreement renders voidable the very agreement not to set up fraud, and, aside from this technical but sound argument, such an agreement would obviously be against public policy." Under all the facts of this case, the representations of the Turnpike Commission amount to a constructive fraud upon the contractor and it was proper to award the additional cost incurred by the contractor as a result thereof.

The court below modified the award of the arbitrators by disallowing interest. Under Section 4 of the Act of May 21, 1937, P. L. 774, it is stated: "The commission is hereby constituted an instrumentality of the Commonwealth, and the exercise by the commission of the powers conferred by this act in the construction, operation and maintenance of the turnpike shall be deemed and held to be an essential governmental function of the Commonwealth." In *Culver v. Commonwealth*, 348 Pa. 472, 35 A. 2d 64, we stated: "As to payment of interest by the State, we said, in *Philadelphia v. Commonwealth*, 276 Pa. 12, 14, 119 A. 723: 'Interest, as between individuals, is recoverable under usage of trade, contract or statute. The theory on which interest is allowed, except in cases of contract to pay interest, is that it is damages for delay or default in payment by the debtor, measured by a rate per cent. The State is not liable to pay interest on its debts unless bound by statute or by contract of its executive officers. The government is presumed to be always ready to pay, and it would be against public policy to declare it otherwise . . .' See also *Northwest'n*

*Nat. Bk. v. Com'nw'lth,* 345 Pa. 192, 27 A. 2d 20. In the instant case, there is no contract by any executive officer to pay interest on the verdict, nor is there any statute calling for such payment." In *Tunison v. Commonwealth,* 347 Pa. 76, 31 A. 2d 521, we said: "Moreover, it is axiomatic that a statute is never presumed to deprive the state of any prerogative, right or property unless the intention to do so is clearly manifest, either by express terms or necessary implication. *Baker et al. v. Kirschnek et al.,* 317 Pa. 225; *Commonwealth v. Trunk et al.,* 320 Pa. 270; see 59 C. J. 1103, §653." The Act of 1937 creating the Turnpike Commission does not indicate any intention on the part of the legislature to require the Commonwealth to pay interest under the circumstances of this case. If the legislature so intended, it would have clearly expressed it in the statute.

We have examined all of the assignments of error and find no reason for disturbing the proceedings of the arbitrators as modified by the court below.

Judgment affirmed.