PENNSYLVANIA TURNPIKE COMMIS-
SION v. WELSH, Judge et al.

Nos. 10322, 10341.

United States Court of Appeals
Third Circuit.

Argued Feb. 5, 1951.

Decided April 11, 1951.

Walter B. Gibbons, Philadelphia, Pa., for petitioner.

Donald J. Farage, Philadelphia, Pa. (Richter, Lord & Farage, Philadelphia, Pa., Frank A. Sinon and Rhoads & Sinon, all of Harrisburg, Pa., on the brief), for L. G. DeFelice & Son, Inc.

Marvin Comisky, Philadelphia, Pa., for Jean Browne Scott Darby et al.

James L. Baxter, Philadelphia, Pa., for respondent.

Before KALODNER, STALEY and HASTIE, Circuit Judges.

HASTIE, Circuit Judge.

We must decide in these cases whether the Pennsylvania Turnpike Commission is entitled to writs of prohibition against the judges of the United States District Court for the Eastern District of Pennsylvania to prevent them from proceeding with two cases against the Commission. The issue which is the same in each case has arisen in the following manner: Two groups of landowners filed suits in the district court against a contractor who is building the Philadelphia extension of the turnpike. The owners, who are citizens of Pennsylvania, alleged that in the course of his operations, the contractor trespassed upon their property. The contractor, L. G. Felice & Sons, a Connecticut corporation, alleged that whatever trespasses it may have committed were committed pursuant to the authority and subject to the indemnification of the Pennsylvania Turnpike Commission. Consequently, it asked and obtained leave to have the Commission joined as a third party defendant. After service, the Commission appeared specially and moved in each case to have the third party complaint against it dismissed alleging that it was an instrumentality of the State of Pennsylvania and therefore could not be sued without the state's consent; and that the statute which established it as a distinct corporate entity also made it suable only in the "proper courts at the county of Dauphin".[1] The district court, after hearing, denied the motions. These applications for writs of prohibition followed.

■ The writs will not issue. The district court has considered the claims made that it was without jurisdiction, and has rejected them. In so doing it decided a substantial and debatable question of law. It is now claimed that the district court erred in its decision. This issue—whether the district court was right or wrong—can be raised in normal course on appeal if the Commission loses on the merits. In these circumstances, the application falls short of the necessary basis for the issuance of extraordinary and peremptory writs.

■ The problem before us is not a new one. There is a substantial body of authority on the use by federal courts of the extraordinary writs of prohibition and mandamus. See IA Ohlinger's Federal Practice 404-429 (1950). Courts of appeals are authorized to issue them only as "necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law". 28 U.S.C.A. § 1651, 62 Stat. 944 (1948), as amended 63 Stat. 102 (1949). One of the areas in which use of such writs has been important, and the only one we need consider here, concerns the power of appellate courts to see to it that lower courts do not abuse their powers as courts. Generally, this function has been confined to cases where the abuse is plain from the record. E. g., Ex parte Wisner, 1906, 203 U.S. 449, 27 S. Ct. 150, 51 L.Ed. 264; Ex parte Davis, 1923, 262 U.S. 274, 43 S.Ct. 574, 67 L.Ed. 979; Ward Baking Co. v. Holtzoff, 2 Cir., 1947, 164 F.2d 34.[2]

---

1. 36 Purdon's Pa.Stat.Ann. § 653e (c).

2. Rather different administrative considerations are involved where the district court in making a very unusual disposition of one case has indicated that it is about to undertake a program of similar orders in a substantial body of cases. Cf. United States v. Kirkpatrick, 3 Cir., 1951, 186

F.2d 393. Different too is the situation where the district court's denial of a discretionary motion—as on the trial convenience of two different districts—deals with an issue which in its nature must be reviewed before trial, if at all. Paramount Pictures v. Rodney, 3 Cir., 1951, 186 F.2d 111, certiorari denied 1951, 71

450

■ The Supreme Court has expressed the prevailing judicial approach to this type of case by observing that even in "the traditional use" of extraordinary writs "to confine an inferior court to a lawful exercise of its prescribed jurisdiction * * * appellate courts are reluctant to interfere with the decision of a lower court on jurisdictional questions which it was competent to decide and which are reviewable in the regular course of appeal". See Roche v. Evaporated Milk Ass'n, 1942, 319 U.S. 21, 26, 63 S.Ct. 938, 941, 87 L.Ed. 1185. That reluctance has taken orderly form in certain established principles. Among them the rule which controls this case has been clearly stated by this court in a recent opinion. In Hazeltine Corp. v. Kirkpatrick, 3 Cir., 1948, 165 F.2d 683, 685 we said: "If, however, the jurisdiction of the lower court is doubtful, * * * or if the complaining party has an adequate remedy by appeal or otherwise, the writ will ordinarily be denied." [3]

■■ Summary analysis of the issue decided by the district court makes clear the applicability of the stated rule. The Eleventh Amendment provides that "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State or by Citizens or Subjects of any Foreign State". Early cases indicated that the reference to state in the amendment precluded federal jurisdiction only where the state was a party of record. Osborn v. Bank of the United States, 1824, 9 Wheat. 738, 6 L.Ed. 204. But later decisions have indicated that the issue is whether the state is the real party in interest against whom relief is sought. See In re Ayers, 1887, 123 U.S. 443, 8 S.Ct. 164, 31 L.Ed. 216; Minnesota v. Hitchcock, 1902, 185 U.S. 373, 386, 22 S.Ct. 650, 46 L. Ed. 954; Chicago R. I. & P. R. Co. v. Long, 8 Cir., 1950, 181 F.2d 295. Whether a state is the real party in interest will turn on factors widely variant from case to case. Thus here, it is obviously relevant in support of the district court's position that the State of Pennsylvania has immunized itself from financial responsibility for the operations of the turnpike. Cf. State Highway Comm. v. Utah Construction Co., 1929, 278 U.S. 194, 49 S.Ct. 104, 73 L.Ed. 262. It is relevant that the Commission has a large degree of autonomy in its operations. See 36 Purdon's Pa. Stat. Anno. § 653e. On the other side, it is urged that the organic act of the turnpike states that it is an instrumentality of the state. Cf. Aerated Products Co. v. Department of Health of New Jersey, 3 Cir., 1947, 159 F.2d 851. It is relevant that the courts of Pennsylvania have found that the turnpike has certain financial immunities which normally attach to the state. Pennsylvania Turnpike Commission v. Smith, 1944, 350 Pa. 355, 39 A.2d 139; House v. Pennsylvania Turnpike Commission, 1942, 45 Dist. & Co. 677. It is also to be considered that the Commission can acquire property with some of the freedom characteristic of the state. Pennsylvania Turnpike Commission Land Condemnation Case, 1943, 347 Pa. 643, 644, 32 A.2d 910. This catalogue is not exhaustive. And none of the items concludes the issue. They impel in various degrees toward one conclusion or another, but they do not decide the federal question of jurisdiction framed initially in terms of constitutional history and ultimately in terms of federal-state relationships. We do not decide it now. It is enough that the issue was sufficiently doubtful to defeat any claim that the district court acted arbitrarily or in disregard of clearly controlling considerations.

■ In addition, it is obvious that the issue here can as well be reviewed on normal appeal after final order. As offsetting this consideration it is argued only that the alleged involvement of a state warrants im-

S.Ct. 572; cf. De Beers Consolidated Mines v. United States, 1945, 325 U.S. 212, 65 S.Ct. 1130, 89 L.Ed. 1566.

3. Paraphrasing the language of the Supreme Court in Ex parte Chicago R. I. & Pac. Ry., 1921, 255 U.S. 273, 275, 276,

41 S.Ct. 288, 65 L.Ed. 631. And to the same effect in this court see In re Eastman Kodak Co., 3 Cir., 1931, 48 F.2d 125 and Petition of Therianos, 3 Cir., 1948, 171 F.2d 886.

mediate appellate consideration of the issue of jurisdiction. Of course, the fact that the controlling problem before the district court in this case was whether the third party defendant was in legal contemplation a state does not make the court's resolution any more or less a judicial act. This premise granted, special sensitivity to federal-state relationships does not alone seem to have been thought a sufficient basis for granting extraordinary relief in a remarkably similar context. Cf. Ex parte State of Nebraska, 1908, 209 U.S. 436, 28 S.Ct. 581, 52 L.Ed. 876. Finally, we note that legislative provisions favoring review of an entire controversy after final trial disposition [4] are as much entitled to our consideration as claims for special preliminary consideration urged in behalf of a state which has created the legal problem by establishing a distinct corporate entity endowed with some and denied other normal attributes of the sovereign.

The applications for the writs will be denied.

4. See 28 U.S.C. § 1291 (Supp.1950).