James **LINGER**, Plaintiff,

v.

**PENNSYLVANIA TURNPIKE COMMIS-
SION**, Defendant.

Civ. A. No. 15689.

United States District Court
W. D. Pennsylvania.

Feb. 3, 1958.

William A. Challener, Jr., Pittsburgh, Pa., for plaintiff.

Arthur G. Stein, Pittsburgh, Pa., for defendant.

JOHN L. MILLER, District Judge.

The present dispute arises upon the defendant's motion to dismiss. Jurisdiction is averred by reason of diversity of citizenship and a requisite amount in controversy. The plaintiff seeks to recover damages for personal injuries sustained as a proximate result of alleged acts of negligence of the defendant, Pennsylvania Turnpike Commission, in the construction and maintenance of the Pennsylvania Turnpike at a point near Mt. Pleasant, Pennsylvania, where the vehicle accident resulting in the injuries took place.

The first question presented is whether the suit is, in effect, one against the Commonwealth of Pennsylvania in that the defendant Commission is alleged to be an instrumentality of the Commonwealth, performing, as its alter ego, an essential governmental function and thus entitled to the immunity from suit of the sovereign. If that contention is sound, the suit would be barred by the Eleventh Amendment to the Constitution of the United States. The defendant also contends that the complaint fails to state a cause of action and argues in its brief that the Commission cannot be held liable for the negligence of its agents and employees on the principle of respondeat superior.

■ Several Pennsylvania courts of county-wide authority have considered the provisions of the statute establishing the Turnpike Commission, the Act of May 21, 1937, P.L. 774, 36 P.S.Pa. § 652a et seq., and have reached the conclusion that the defendant is engaged in the performance of a solely governmental function as a quasi-public corporate instrumentality of the Commonwealth and therefore not liable for the torts of its agents and employees.[1] Those cases do not constitute such a "consensus of legal thought" as would be binding on this court. Eckman v. Baker, 3 Cir., 1955, 224 F.2d 954, 956.

The Supreme Court of Pennsylvania has in one case referred to the Commission as "an instrumentality of the Commonwealth" which holds title as such to a public highway. Shirks Motor Express Corp. v. Messner, 1953, 375 Pa. 450, 100 A.2d 913. And it has cited the statutory language of Section 4 of the Act and held that the Commission, like the Commonwealth, had no obligation to pay interest on an arbitration award of damages for breach of contract. Pennsylvania Turnpike Commission v. Smith, 1944, 350 Pa. 355, 39 A.2d 139. It has further stated that the Commission performs functions which are both "legislative" and "executive" in nature. Watson v. Pennsylvania Turnpike Commission, 1956, 386 Pa. 117, 125 A.2d 354, 358. It has also emphasized that the Commission is not the Commonwealth. Gitlin v. Pennsylvania Turnpike Commission, 1956, 384 Pa. 326, 121 A.2d 79; Simpson v. Pennsylvania Turnpike Commission, 1956, 384 Pa. 335, 121 A.2d 84. In spite of these statements and the statements found in Ewalt v. Pennsylvania Turnpike Commission, 1955, 382 Pa. 529, 115 A.2d 729, 732, there is still no conclusive evidence in the case law of what the views of the Supreme Court of Pennsylvania on the present problem will be. The Ewalt case however is authority for the proposition that the Commission may be sued upon a clearly authorized cause of action.

■■ Whether or not the Commission is an instrumentality of the Commonwealth is not decisive in resolving the question before this court. It is not by that fact alone rendered immune from suit since "the government does not be-

1. House v. Pennsylvania Turnpike Commission, C. P. Dauphin Co., 1942, 53 Dauphin 38, 45 Pa.Dist. & Co.R. 677, followed in Malpica v. Pennsylvania Turnpike Commission, C. P. Dauphin Co., 1953, 65 Dauphin, Pa., 302, and Caputo v. Pennsylvania Turnpike Commission, C. C. Allegheny Co., 1955, 103 Pittsb. Leg.J. 486.

come the conduit of its immunity in suits against its agents or instrumentalities merely because they do its work." Mr. Justice Frankfurter in Keifer & Keifer v. Reconstruction Finance Corp and Regional Agricultural Credit Corp., 1939, 306 U.S. 381, 388, 59 S.Ct. 516, 517, 83 L.Ed. 784; 49 Am.Jur., States, Territories, and Dependencies § 100 (1943). Judge Hastie has noted in Pennsylvania Turnpike Commission v. Welsh, 3 Cir., 1951, 188 F.2d 447, 450, that the Eleventh Amendment's prohibition of suits against the state extends to situations where the state, though not the party named, is the real party in interest. Hopkins v. Clemson Agricultural College of South Carolina, 1911, 221 U.S. 636, 642, 31 S.Ct. 654, 55 L.Ed. 890. And whether the state rather than its instrumentality is the real party in interest may be determined by analysis of the various attributes and limitations with which the latter has been endowed. Pennsylvania Turnpike Commission v. Welsh, supra; cf. 81 C.J.S. States § 131 (1953).

From a reading of the Act, it appears that the Pennsylvania Turnpike Commission was created and empowered to construct, operate and maintain the Pennsylvania Turnpike extending from Middlesex to Irwin. It is constituted of five members including the Secretary of Highways of the Commonwealth and four other members appointed by the Governor who serve for designated terms and who are not removable at the pleasure of the Governor. Watson v. Pennsylvania Turnpike Commission, 386 Pa. 117, 125 A.2d 354. In the performance of its designated functions, the Commission is authorized to adopt regulations for its operations, to acquire such interests in real or personal property as may be necessary; it may make such contracts and agreements as are necessary or incidental to the performance of its functions; and it has power to employ architects, engineers and other necessary employees and to fix and pay their compensation. Unlike the ordinary governmental agency, it may employ its own attorneys. Cf. 71 P.S.Pa. § 192.

The legislature has given the Commission the right to issue revenue bonds which must be signed by the Governor but which are not a debt of the Commonwealth nor a pledge of the faith and credit of the Commonwealth. The issuance of such bonds was originally authorized only to pay the cost of the construction of the Turnpike, but by an amendment to Section 8 of the Act, revenue bonds may also be issued "for any other purpose." The Commission may charge and collect tolls for the use of the Turnpike which are deposited in a special account, subject to the control and jurisdiction of the Commission alone. The fund created by the collection of tolls is specially earmarked to pay the principal and interest on the revenue bonds which the Commission issues and to pay the cost of "maintaining, repairing and operating the turnpike."

The maintenance and repairing of the Turnpike is under the control of the Commission through the Pennsylvania Department of Highways, but the Commission must pay the expenses thereof. In addition, the Commission is required to obtain the approval of the Department of Highways of all agreements relating to the construction of the Turnpike and connecting tunnels and bridges. Eventually when all the bonds issued by the Commission as well as interest thereon have been paid, the Turnpike is to become a part of the system of public highways of the Commonwealth administered by the Department of Highways, toll free, and all the properties of the Commission will then vest in the Department of Highways.

Section 4 of the Act contains an express statement that the Commission is constituted "an instrumentality of the Commonwealth," the performance of whose functions "shall be deemed and held to be an essential governmental function of the Commonwealth." It is further expressly provided that the Commission "may sue and be sued, plead and be impleaded."

This case is not one of first impression in the federal courts. Other federal dis-

trict courts in Pennsylvania have analyzed the act creating the Turnpike Commission and have reached the conclusion that the Commission is an entity sufficiently separate and distinct from the Commonwealth of Pennsylvania and required to respond to process.[2]

Whether the Commission is entirely separate and distinct from the Commonwealth for every purpose need not and probably could not be determined. But that it is separate and distinct from the state government in that its finances are independent of the state's, and its obligations are not a Commonwealth debt must be conceded. Opinion of Deputy Attorney General Rubendall to Governor Fine, August 24, 1953, 86 Pa.Dist. & Co.Rep. 71. One of the crucial questions involved in determining whether the state is a real party in interest is whether the relief sought is relief against the sovereign. Cf. State of Minnesota v. Hitchcock, 1902, 185 U.S. 373, 386, 22 S.Ct. 650, 46 L.Ed. 954; Larson v. Domestic and Foreign Commerce Corp., 1949, 337 U.S. 682, 687, 69 S.Ct. 1457, 93 L.Ed. 1628. The plaintiff seeks a judgment for money damages and a judgment if entered will bind only the Pennsylvania Turnpike Commission. The Commonwealth of Pennsylvania has by statute insulated its treasury from the obligations of the Turnpike Commission.

This is not a case where immunity must be decreed because there are no funds available for satisfaction of a judgment against the state instrumentality. See 81 C.J.S. States § 131. The Commission has power to create the necessary funds either by the exercise of its unrestricted power to issue revenue bonds or by adjusting tolls sufficiently to cover what may properly be considered one of the costs of the operation of the Turnpike. Therefore the reasoning of State Highway Commission of Wyoming v. Utah Construction Company, 1929, 278 U.S. 194, 49 S.Ct. 104, 73 L.Ed. 262 is applicable though a different conclusion is reached. See also Louisiana Highway Commission v. Farnsworth, 5 Cir., 1935, 74 F.2d 910, certiorari denied, 1935, 294 U.S. 729, 55 S.Ct. 638, 79 L.Ed. 1259; Port of Seattle v. Oregon & Washington Railroad Co., 1921, 255 U.S. 56, 71, 41 S.Ct. 237, 65 L.Ed. 500.

Furthermore, it is of importance that the Commission has been expressly authorized by the legislature to "sue and be sued." That phrase is one which has been frequently employed by Congress to indicate that immunity from suit has been withheld from its corporate instrumentalities. See Keifer & Keifer v. Reconstruction Finance Corp. and Regional Agricultural Credit Corp., 306 U.S. 381, 390 et seq., 59 S.Ct. 516, 83 L.Ed. 784. We are not convinced that the Pennsylvania Supreme Court would attach any different interpretation to those words. See Merchants' Warehouse Co. v. Gelder, 1944, 349 Pa. 1, 36 A.2d 444, 448, Note 4. Moreover, even where the state may be considered a real party in interest in suits against its corporate instrumentalities, authorization to "sue and be sued" is regarded generally as a consent to suit or waiver of a sovereign's immunity from suit. 49 Am.Jur., States, Territories and Dependencies § 102.

The Pennsylvania Turnpike Commission enjoys wide corporate powers, some of which have been listed above. It is subject in certain respects to supervision, for the Governor might refuse to endorse the revenue bonds of the Commission and the execution of construction contracts might be prevented by the Department of Highways. In a practical sense, too, the Turnpike is merely a part of the system of public highways of the state and the technical distinctions between the Turnpike and other highways will one day be removed.

2. Hunkin-Conkey Construction Co. v. Pennsylvania Turnpike Commission, D.C. M.D.Pa.1940, 34 F.Supp. 26; Darby v. L. G. DeFelice & Son, Inc., D.C.E.D. Pa.1950, 94 F.Supp. 535; Lowes v. Pennsylvania Turnpike Commission, D.C.M.D. Pa.1954, 125 F.Supp. 681; Eastern Motor Express, Inc. v. Espenshade, D.C. E.D.Pa.1956, 138 F.Supp. 426.

**904**

The Commonwealth obviously has an interest in the Turnpike. But its interest is prospective. It has chosen to delegate governmental power to an instrumentality which exercises independent authority and has independent financial responsibility. The Commission and not the state has a direct and independent interest in the result of this action. Port of Seattle v. Oregon & Washington Railroad Co., supra. Since the Commission is not the state or a mere nominee or agent of the state it does not enjoy immunity from suit.

■ For the reasons which have been stated above, the defendant's argument that it may not be held liable for the negligence of its agents and employees must be rejected. The cases relied upon by the defendant are not in our view indicative of the state law. We are unwilling to decide, as defendant's position would require, that the legislative authorization of suits against the Turnpike Commission extends to suits sounding in contract[3] but does not apply to actions ex delicto arising from the construction, operation and maintenance of the Pennsylvania Turnpike. We hold therefore that the Pennsylvania Turnpike Commission may be held liable for the negligent performance of duties imposed upon it by the Act of 1937.

■■ The final question presented by the motion to dismiss is whether the plaintiff has stated a cause of action under the substantive Pennsylvania tort law. The defendant contends that the plaintiff is required to allege facts which reveal the inapplicability of the Pennsylvania rule which relieves a tort-feasor from liability where the harm is suffered because of the independent, intervening negligence of a second actor who has become aware of the risk created by the first actor. See Jeloszewski v. Sloan, 1953, 375 Pa. 360, 100 A.2d 480. The difficulty is that the court has no way of knowing whether that rule should be applied until the facts are developed. Its

applicability is in reality a matter of defense pleading under Rule 8(c), Fed. Rules Civ.Proc., 28 U.S.C., and of defense proof. The plaintiff's complaint is sufficient.

An appropriate order will be entered.

---

3. Cf. Kusner v. Pennsylvania Turnpike Commission, C. P. Dauphin Co., 1950, 61 Dauphin, Pa., 140; Blair v. Pennsylvania Turnpike Commission, C. P. Westmoreland Co., 1954, 2 Pa.Dist. & Co.R.2d 209.