**Arnold S. GORDENSTEIN, Plaintiff,**

v.

**The UNIVERSITY OF DELAWARE
et al., Defendants.**

**Civ. A. No. 74–59.**

United States District Court,
D. of Delaware.

Sept. 16, 1974.

Sheldon N. Sandler, Bader, Dorsey & Kreshtool, Wilmington, Del., for plaintiff.

William Poole, Potter, Anderson & Corroon, Wilmington, Del., for defendants.

---

OPINION

STAPLETON, District Judge:

Arnold Gordenstein is a former member of the faculty of the University of Delaware ("University"). Seeking reinstatement and damages, he has sued numerous defendants: the University itself, the members of the University's Board of Trustees, and several administrative officers of the University. Ju-

risdiction is purportedly conferred by 28 U.S.C. § 1331, 28 U.S.C. § 1343(3) and 28 U.S.C. § 1343(4).

Plaintiff's grievances can be succinctly stated. From September 1, 1967, until August 31, 1973, the University employed plaintiff as a non-tenured professor. In November of 1971, plaintiff was informed that he would not receive tenure and that his contract would not be renewed upon its expiration on August 31, 1973. These determinations, plaintiff alleges, were made without any warning of inadequate performance, without a hearing held at a meaningful time, and without consultation with several segments of the University faculty and administration. Further, plaintiff alleges that he received no opportunity to cross-examine adverse witnesses, to present favorable witnesses, or to be represented by counsel. On this basis, he claims that his right to procedural due process guaranteed by the Fourteenth Amendment has been violated. Finally, plaintiff asserts that the University's decision was without basis in fact and discriminatory and that, accordingly, his rights to substantive due process and equal protection of the laws have also been abridged. The motions presently before the Court raise a number of questions which will be examined in turn.

I. DOES THIS COURT HAVE JURISDICTION OVER PLAINTIFF'S CLAIM AGAINST THE UNIVERSITY?

It is plaintiff's contention that he has a cause of action against the University deriving from the Civil Rights Act, 42 U.S.C. § 1983, or directly from the Fourteenth Amendment to the United States Constitution. In reply to the Civil Rights Act claim, the University asserts that it is not a "person" within the meaning of 42 U.S.C. § 1983.[1] This

---

1. 42 U.S.C. § 1983 provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the ju-

risdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

contention is discussed later in this opinion. In what would appear to be a distinct argument going to the jurisdiction of the Court, the University also urges: (1) that in Skehan v. Board of Trustees of Bloomsburg State College, 501 F.2d 31 (3d Cir. 1974), "the Third Circuit held that if, under *state* law, an educational institution is a state agency, then it is immune from suit under the Civil Rights Act" and (2) "the Delaware courts have held that the University is a state agency in Parker v. University of Delaware . . . and subsequent cases. . . ."[2] This Court, however, does not read the *Skehan* and *Parker* cases as dispositive.

The *Skehan* case deals primarily with the question of whether and when a state-affiliated entity may be entitled to the state's immunity from suit in a federal court under the Eleventh Amendment to the United States Constitution. That Amendment provides:

> "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

■ The State of Delaware is, of course, not a named party to this litigation. It has long been the rule, however, that the applicability of the Eleventh Amendment is to be judged not by who the nominal parties are, but by the nature and effect of the proceeding.[3] It is said that, if the state is the "real party in interest", the suit is in reality one "against the state" and thus barred by the Eleventh Amendment.[4]

■ The question whether the state is the "real party in interest" is one of *federal* law.[5] This does not mean, of course, that state law is irrelevant in the present context. In determining whether an entity like the University is so closely related to the state as to share its Eleventh Amendment shield, it will ordinarily be the law of the state which defines the relationship. State law is the context in which the matter is to be determined, but it does not provide the controlling rule of law. Judge Stahl, writing for the Third Circuit in Urbano v. Bd. of Managers of New Jersey State Prison, 415 F.2d 247 (3rd Cir. 1969), has put the matter this way:

> " . . . The conclusion that must be reached before the Eleventh Amendment may be interposed by appellant is that the state is the real party in interest [cites omitted].

In determining whether an 'alter ego' status attaches to the instrumentality of a state, it has been said:

> * * * [L]ocal law and decisions defining the status and nature of the agency involved in its relation to the sovereign are factors to be considered, but only one of a number that are of significance.

---

2. In the *Skehan* case, the court remarked, in dictum and without discussion, that the university there involved was not a "person" within the meaning of Section 1983. The portion of the *Skehan* opinion to which the University directs our attention, however, involves an Eleventh Amendment jurisdictional problem.

3. Ford Motor Co. v. Dep't of Treasury, 323 U.S. 459, 464, 65 S.Ct. 347, 89 L.Ed. 389 (1945); Ex parte New York, 256 U.S. 490, 500, 41 S.Ct. 588, 65 L.Ed. 1057 (1921); Harrison Construction Co. v. Ohio Turnpike Commission, 272 F.2d 337, 339 (6th Cir. 1959).

4. Ford Motor Co. v. Dep't of Treasury, *supra;* Minnesota v. Hitchcock, 185 U.S. 373, 386, 22 S.Ct. 650, 46 L.Ed. 954 (1902); In re Ayers, 123 U.S. 443, 8 S.Ct. 164, 31 L.Ed. 216 (1887); Urbano v. Bd. of Managers of New Jersey State Prison (hereafter, Urbano v. Bd. of Managers), 415 F.2d 247, 250 (3rd Cir. 1969); S. J. Groves & Sons Co. v. New Jersey Turnpike Authority, 268 F. Supp. 568, 574 (D.N.J.1967).

5. Masse v. Pennsylvania Turnpike Commission, 163 F.Supp. 510, 511 (E.D.Pa.1958); Fleming v. Upper Dublin School Dist., 141 F.Supp. 813 (E.D.Pa.1956); *cf.*, Urbano v. Bd. of Managers, *supra*. Pennsylvania Turnpike Commission v. Welsh, 188 F.2d 447, 450 (3rd Cir. 1951); S. J. Groves & Sons Co. v. New Jersey Turnpike Authority, 268 F.Supp. 568, 571 (D.N.J.1967).

Among the other factors, no one of which is conclusive, perhaps the most important is whether, in the event plaintiff prevails, the payment of the judgment will have to be made out of the state treasury; significant here also is whether the agency has the funds or the power to satisfy the judgment. Other relevant factors are whether the agency is performing a governmental or proprietary function; whether it has been separately incorporated; the degree of autonomy over its operations; whether it has the power to sue and be sued and to enter into contracts; whether its property is immune from state taxation, and whether the sovereign has immunized itself from responsibility for the agency's operations. Krisel v. Duran, 258 F.Supp. 845, 849 (S.D.N.Y.1966), aff'd per curiam, 386 F.2d 179 (2d Cir. 1967), cert. denied, 390 U.S. 1042, 88 S.Ct. 1635, 20 L.Ed.2d 303 (1968) (footnotes omitted)." 415 F.2d at 251–252.

The *Skehan* case does not, in this Court's judgment, dictate a different approach. While the opinion in that case makes repeated references to the law of Pennsylvania, the purpose was to ascertain "the status of [Bloomsburg] College in the governmental structure of the Commonwealth." The role of state law in *Skehan* is, accordingly, consistent with that described in *Urbano*.[6]

■ In applying the *Urbano* test to the University of Delaware, the Court has reviewed the applicable Delaware statutes,[7] the relevant case law, and factual data stipulated into the record by the parties. Based upon the following analysis, the Court has concluded that the University is not a state agency for purposes of the Eleventh Amendment.

It appears that the University has both the power and the resources to pay any judgment entered against it herein without further action by the Delaware Legislature or any other governmental officer or entity. It is stipulated that any such judgment will be "paid by the University". The potential impact upon the Treasury of the State of Delaware is indirect, at best. Traditionally, the state has provided the University with financial support. In the 1972–1973 school year, for example, 34.1% of total revenues available to the University from all sources was appropriated by the Legislature. To the extent the payment of a judgment entered here depletes the resources of the University, this may increase the demand thereafter made upon the State and the University's other revenue sources, but this is an "ancillary" effect, insufficient to bring the Eleventh Amendment into play. Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L. Ed.2d 662 (1974).

Under Delaware law, the University is a separately incorporated entity with statutorily guaranteed "perpetual succession and existence." [8] As such, it has "all the powers and franchises incident to a corporation, including the power to take and hold real and personal estate . . . and the same to . . . sell . . . and dispose of as occasion may require and the proceeds thereof to reinvest . . . for the benefit of the University . . ." [9]

The University is governed by a Board of Trustees composed of 28 regu-

---

6. Federal courts may have occasion to look to state law in Section 1983 cases for an additional reason. Congress intended that common law defenses to analogous state claims be available in civil rights cases. Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). This may explain the *Skehan* court's reference to the Pennsylvania law of "governmental function" immunity (contrasted with sovereign immunity). Ayala v. Philadelphia Bd. of Public Education, 453 Pa. 584, 305 A.2d 877 (1973).

The existence and scope of such defenses, however, involve questions of federal law which are to be determined on the basis of general common law and not the law of the state in which the court sits. Fidtler v. Rundle, 497 F.2d 794 (3rd Cir. 1974).

7. The statutes describing the status of the University are set forth at 14 Del.C. cc. 51–57.

8. 14 Del.C. § 5101 (West 1953).

9. 14 Del.C. § 5104 (West 1953).

lar and 4 ex-officio members: the Governor, the University's President, the President of the State Board of Education and the "Master of the State Grange." Eight of the regular members are appointed by the Governor with the consent of the State Senate; the remaining twenty are elected by a majority of the Board itself.[10] Broad autonomy is conferred on the Board of Trustees; they are granted "entire control and management of the University."[11] Among the areas in which state law expressly accords the Trustees complete independence are: employee salaries; tuition rates; the adoption of a University budget; the selection of procedures for investing, depositing, controlling and allocating funds and securities; the decision whether to participate in federally-sponsored aid programs; the formulation of contracts for construction and other purposes; and the erection of buildings and other improvements to University property.[12] The fiscal autonomy of the University is further manifested by the fact that it may maintain an endowment in its own name[13] and may issue and repay revenue bonds and other obligations.[14] Of significance is the fact that Delaware law imposes on the University the *exclusive* responsibility for making payment on its bonds and expressly prohibits the state from pledging its own credit on the University's behalf.[15]

The State Legislature has imposed on the University relatively few responsibilities which diminish the scope of this autonomy. The University President is required to make an annual report to the Trustees who must in turn transmit it to the Governor and the Legislature.[16] Although state officials are authorized to audit the University's finances, their inquiry is strictly limited in scope to the University's handling of state appropriations.[17] The University must observe certain general guidelines in awarding monies which the Legislature has earmarked for scholarships.[18] And, finally, the University must provide a course on Delaware History, to be taken by all students,[19] maintain a school of agriculture,[20] a summer school for teachers,[21] and a Department of Physical Education.[22] Aside from these restrictions, the University's discretion in matters of educational policy appears to be unfettered.

Since the state treasury is insulated from a judgment in plaintiff's favor, since the University has both the funds and the legal power to satisfy such a judgment, and since under Delaware law the University is an independent corporation exercising virtually complete fiscal and educational autonomy, this Court concludes that the University is not an arm or alter ego of the State of Delaware under the Eleventh Amendment and therefore is not immune from suit.[23]

10. 14 Del.C. § 5105 (West 1953).

11. 14 Del.C. § 5106 (West 1953).

12. 14 Del.C. § 5106 (West Supp. 1970).

13. 14 Del.C. § 5112 (West 1953).

14. 14 Del.C. § 5115 (West Supp.1970).

15. 14 Del.C. § 5117 (West Supp.1970).

16. 14 Del.C. § 5110 (West 1953).

17. 14 Del.C. § 5109 (West Supp.1970).

18. 14 Del.C. §§ 5502–5503 (West 1953).

19. 14 Del.C. § 5303 (West 1953).

20. 14 Del.C. § 5304 (West 1953).

21. 14 Del.C. § 5302 (West 1953).

22. 14 Del.C. § 5309 (West 1953).

23. Contending that the University is immune, the defendants rely on three Delaware cases characterizing the University as an "agency" of the state. However, the context in which these cases examined the status of the University did not involve the same considerations this Court must address under the Eleventh Amendment. In Parker v. University of Delaware, 31 Del.Ch. 381, 75 A.2d 225 (1950), and University of Delaware v. Keegan, 318 A.2d 135 (Del.Ch.1974), the Chancery Court focused on whether the relationship between the University and the state established the elements of "state action" required to trigger Fourteenth Amendment scrutiny; clearly the Fourteenth Amendment test for "state action" is less rigorous than the test for an "arm" of the state mandated under the Eleventh Amendment. In City of Newark v. University of Delaware,

The fact that the University may be assisting the State of Delaware in the performance of a governmental function is not determinative.[24]

## II. DOES THE COMPLAINT STATE CLAIMS AGAINST THE DEFENDANTS UPON WHICH RELIEF CAN BE GRANTED?

### A. *The Claims Against All Defendants.*

The defendants assert that plaintiff has not stated a claim against *any* defendant because he has not alleged the invasion of a "property" or "liberty" interest sufficient to trigger the safeguards of the Fourteenth Amendment. Defendants thus conclude that the complaint must be dismissed as to all.

In the companion cases of Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), and Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), the Supreme Court stressed that procedural due process must accompany the termination of public employment only if the discharged employee has been deprived of "property" or "liberty" interests protected by the Fourteenth Amendment. 408 U.S. at 571, 92 S.Ct. at 2701. A protected "property interest", the Court held, will not exist if the employee merely has a "unilateral" expectation of continued employment. 408 U.S. at 577, 92 S.Ct. at 2701. Rather, he must have a "legitimate claim of entitlement" to his job. *Id.* Such an entitlement may assume a wide variety of forms. The employee may, for example, place reliance on a formal instrument, such as a contract, state statute or administrative regulation, which guarantees him employment absent some specified cause for removal. Alternatively, the employee's entitlement may derive from informal and perhaps unwritten sources

such as institutional policies and practices which provide objective assurance that he will be secure in his position unless he falls short of some established standard of performance.

Thus, in Perry v. Sindermann, the Court held that an untenured professor would merit Fourteenth Amendment protection if he could show that, under the "policies and practices of the institution", there was an "unwritten 'common law' . . . that certain employees shall have the equivalent of tenure." 408 U.S. at 602, 92 S.Ct. at 2700.

The plaintiff in this case has not alleged that the University made a formal, contractual commitment to re-employ him after his appointment expired in 1973. He has, however, alleged that "under the [University's] evaluation procedures, non-tenured faculty have a clear expectation of continued employment absent inadequate performance." At the present stage, the only relevant question is whether it appears beyond doubt that plaintiff can prove no set of facts at trial based on this allegation which would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45–46, 78 S. Ct. 99, 2 L.Ed.2d 80 (1957). It does not so appear.

Defendants' argument is that there can be no "de facto" tenure at a University with a *de jure* tenure system. Since the complaint shows plaintiff to be a non-tenured professor at an institution having some kind of tenure program, the defendants maintain as a matter of law that he is entitled to no relief.

There can be no doubt that the existence of a tenure system is a highly relevant fact in this context. Ordinarily, it will be a difficult task indeed for a teacher to prove that despite the fact that he or she has not been expressly granted tenure there is a tacit mutual

---

304 A.2d 347 (Del.Ch.1973), the question was whether, as a governmental entity, the University was immune from local zoning ordinances—once again, a different inquiry from a determination of the University's status under the Eleventh Amendment.

24. *See,* S. J. Groves & Sons Co. v. New Jersey Turnpike Authority, *supra,* 268 F.Supp. at 578; Linger v. Pennsylvania Turnpike Commission, 158 F.Supp. 900 at 904 (W.D. Pa.1958).

understanding that he or she has something like the equivalent of that status. The Court, however, is unwilling to rule that the existence of a tenure system is inconsistent as a matter of law with the existence of an objective expectation of continued employment sufficient to bring the Fourteenth Amendment into play. The defendants do not urge that the University's tenure system is mandated by a statute which preempts the field and, accordingly, that other assurances to non-tenured faculty would be unauthorized as a matter of law. The current record does not disclose either the source of the University's tenure system or its terms. Indeed, the Court knows nothing about the assurances inherent in tenured status at the University or the assurances, if any, engendered by the University's "evaluation procedures". Accordingly, the possibility of a "de facto" status below that of tenure and yet sufficient under *Sindermann* has not been eliminated.

The parties also disagree as to whether the complaint alleges deprivation of a "liberty" interest. Both agree that under *Roth* a deprivation of liberty occurs if an employee's discharge is accompanied by "[a] charge against him that might seriously damage his standing and associations in the community." 408 U.S. at 573, 92 S.Ct. at 2707. Since plaintiff represented in the course of oral argument that he is prepared to amend his complaint to allege facts clearly meeting the *Roth* standard and since the Court has determined that deprivation of a property interest has been sufficiently alleged, the Court finds it unnecessary to resolve this dispute. The plaintiff will have ten days from the date of this opinion in which to file an amended complaint.

B. *The Claim Against The University.*

As noted above, the University claims that it is not a person within the meaning of 42 U.S.C. § 1983, and that the plaintiff has accordingly failed to state a claim against it. In making this argument, the University relies on the Monroe v. Pape [25] and Moor v. County of Alameda [26] decisions in which the Supreme Court held that municipalities and counties, respectively, are not "persons" within the meaning of Section 1983; on United States ex rel. Gittlemacker v. Philadelphia, [27] in which the Third Circuit held, on the authority of *Monroe*, that states were not "persons" as well; on the rather uniform line of decisions, in this jurisdiction and elsewhere, holding public school boards and school districts not to be "persons" [28] and, lastly, on Delaware cases declaring the University to be a "state agency". Put simply, the University's argument appears to be this: since the state itself is not a "person" and since the University is an agent for "the purpose of exercising a portion of the governmental functions of the State relating to education", the University should share the state's exemption from liability under Section 1983,[29] just as comparable instrumentalities (school boards, school districts) share the municipal exemption from liability under Section 1983. For the reasons stated below, the Court rejects this proposition.

In the *Gittlemacker* case, the Third Circuit extended the protective cloak of *Monroe* to the states, declaring that "[i]n view of the Supreme Court's holding in Monroe v. Pape, *supra*, that a municipal corporation is not a 'person' subject to suit within the meaning of the Civil Rights Act, the conclusion that states are not persons within the mean-

25. 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).

26. 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973).

27. 413 F.2d 84 (3rd Cir. 1969).

28. *See, e. g.,* Harvey v. Sadler, 331 F.2d 387, 390 (9th Cir. 1964); Hayes v. Cape Henlopen School District, 341 F.Supp. 823 (D.

Del.1972); Boyce v. Alexis I. DuPont School District, 341 F.Supp. 672 (D.Del. 1972.

29. Throughout this discussion, the phrase "exemption from liability" will be used to avoid confusion with the similar, but analytically distinct, Eleventh Amendment concept *of immunity* from suit.

ing of the Act is inescapable." 413 F.2d at 86 n. 2. In so holding the Third Circuit relied principally on Williford v. California, 352 F.2d 474 (9th Cir. 1965), which had said that:

> ". . . a municipal corporation is but a political subdivision of a state, and if a state's political subdivisions are not 'persons' under the statute, then neither is the state . . . ." (cites omitted.) 352 F.2d at 476.

The Third Circuit has also had occasion to consider whether the term "person" encompasses a state-affiliated educational institution. The question arose in Braden v. Univ. of Pittsburgh, 477 F.2d 1 (3rd Cir. 1973). The court there declared that "[i]f the University [of Pittsburgh] is a state agency, the cause of action based on 42 U.S.C. § 1983 cannot be maintained" against it. 477 F.2d at 7 n. 10. One can accordingly say that the question for resolution in this case is whether the University of Delaware is an "agency" of the State of Delaware. Unfortunately, however, *Braden* does not elaborate on the concept of "state agency" in a Section 1983 context. Similarly, *Gittlemacker, Monroe* and *Moor* provide little help in giving content to the "state agency" concept.[30]

■ Given the *Gittlemacker* holding that Congress intended to exclude states from the sweep of the Civil Rights Act, the question becomes one of determining the area in which exemption from liability is necessary to serve Congressional intent. This question is not unlike that confronted in determining the scope of a state's Eleventh Amendment immunity, and it seems to this Court that the same factors are of relevance. The principal inquiry must be whether the exposure of the particular entity to liability will substantially burden the State Treasury or otherwise substantially hinder those operations over which the state has retained control. Based on the previous findings that the University of Delaware is a financially independent and substantially autonomous entity, the Court concludes that the University of Delaware *is not* a "state agency" in the context of Section 1983 and, accordingly, *is* a "person" as that term is there used.[31]

■ Implicit in this holding is a rejection of the University's contention that the *Parker* line of Delaware cases is dispositive. The construction of Section 1983 presents a federal question. Moreover, the holdings of *Parker* and its progeny go to the issue of "state action"—the "under color of state law" requirement of Section 1983.[32]

Nor is the fact that the University is assisting the State of Delaware to perform a governmental function dispositive. As the *Urbano* case suggests in the Eleventh Amendment area, the function performed by the entity sued, be it governmental or proprietary, may be a factor for consideration in determining whether it is a state agency. The char-

---

**30.** *Monroe* and *Moor* rest on the legislative history of Section 1983. That history indicated to the Supreme Court that Congress had made a deliberate decision to exclude cities and counties from the sweep of the Civil Rights Act and that it did so because it believed it lacked power under the Constitution to impose liability on political subdivisions of the states. The reasons for this Congressional belief are unclear, however, and the legislative history, accordingly, provides no basis for inferring a Congressional intent with respect to state-affiliated entities which do not constitute political subdivisions. The limited analysis of the cases extending the exemption from liability to the states likewise provides no basis for logical extrapolation.

**31.** This case is distinguishable from Skehan v. Board of Trustees, *supra*. The Third Circuit there remarked that Bloomsburg State College was not a "person" within the meaning of 42 U.S.C. § 1983. 501 F.2d at 44. While the status of Bloomsburg State College under Pennsylvania law and its relationship to the state are not fully developed in *Skehan*, the court did note that the College was "not a separately chartered corporation . . . but a subdivision of the Commonwealth Department of Education. . . ." 501 F.2d at 34.

**32.** United States v. Price, 383 U.S. 787, 794–795 n. 7, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966).

acter of the function performed bears no necessary relationship to the impact of suit upon the state, however, and for that reason cannot be utilized as a determinative criterion.[33]

### C. The Claims Against The Individual Defendants.

Each individual defendant urges that the complaint must be dismissed as to him because it fails to identify with specificity any act or omission on his part which violated plaintiff's constitutional rights.

The Court agrees with the individual defendants that no facts are alleged in the complaint which would require the imposition of vicarious liability upon them. The doctrine of *respondeat superior* relied upon by the plaintiff, even if applicable in suits under Section 1983,[34] imposes liability on a master for the acts of his servant.[35] The University is the master here, not the individual defendants. Nevertheless, I conclude that the complaint states claims against the individual defendants.

As noted above, the individual defendants are either members of the Board of Trustees or administrative officers of the University. All of the defendants are alleged to have "failed to follow proper procedures in evaluating plaintiff for tenure." Further, it is alleged that prior to the termination of plaintiff's employment, the College of Arts and Sciences' Committee on Freedom and Responsibilities and the University's Senate Committee on Welfare and Privileges each held hearings and studied the circumstances of the decision not to grant a new contract and tenure to plaintiff. Both concluded that the decision had been made in violation of plaintiff's right to due process. The former group is alleged to have reported to defendant Keasey and asked for remedial action; he refused to act. The Senate Committee's recommendation allegedly was sent to all of the defendants, and they likewise refused to take any action.

The complaint thus alleges (1) that the named officers and trustees participated in a procedurally defective evaluation process, and (2) that, despite notice and opportunity, these managing agents of the University refused to accord the plaintiff his constitutional rights after the initial decision was made and before the employment terminated. It is not possible to say that no facts could be proved in support of these allegations which would entitle plaintiff to relief. Conley v. Gibson, *supra*.

### III. DOES THE COMPLAINT ALLEGE FACTS WHICH ESTABLISH THE AFFIRMATIVE DEFENSES OF LIMITATIONS AND OFFICIAL IMMUNITY?

Defendants maintain that Gordenstein's complaint alleges facts which show: (1) that his claims are barred by limitations and (2) that the individual defendants are immune from liability on the damage claims asserted therein.

33. The Court's disposition of defendant's claim that it is not a "person" under 42 U.S.C. § 1983 makes it unnecessary to consider the difficult question of whether plaintiff's cause of action against the University can be predicated directly upon the Fourteenth Amendment and his suit maintained under 28 U.S.C. § 1331 or § 1343(3). While the Third Circuit can be read to have suggested an affirmative response to this question in Braden v. University of Pittsburgh, 477 F.2d 1, 7 n. 10 (3rd Cir. 1973), and Skehan v. Board of Trustees, 501 F.2d 31 (3rd Cir. 1974), the question may still be regarded as an open one. It would appear that in neither case was the court's attention called to the tension between a judicially created remedy against a state or political subdivision and the Congressional will expressed in Section 1983.

34. *Compare* Jennings v. Davis, 476 F.2d 1271 (8th Cir. 1973) ; Adams v. Pate, 445 F.2d 105 (7th Cir. 1971) ; Madison v. Gerstein, 440 F.2d 338 (5th Cir. 1971) ; Dunham v. Crosby, 435 F.2d 1177 (1st Cir. 1970) ; Campbell v. Anderson, 335 F.Supp. 483 (D. Del.1971) ; *with* Hill v. Toll, 320 F.Supp. 185 (E.D.Pa.1970).

35. Boettger v. Moore, 483 F.2d 86 (9th Cir. 1973) ; Carter v. Carlson, 144 U.S.App.D.C. 388, 447 F.2d 358, 370 n. 39 (1971).

## A. *Limitations*

Plaintiff first learned in November of 1971 that his contract would not be renewed. In August of 1973, his contract expired and he actually left the University's faculty. This suit was filed in April of 1974. In the view which the Court takes of the matter, it is unnecessary to determine when plaintiff's claims accrued.

Congress has not prescribed a limitations period for the commencement of suits under Section 1983. This Court must therefore observe the limitations period governing analogous causes of action under state law. Howell v. Cataldi, 464 F.2d 272 (3rd Cir. 1972).

Section 8106 of Title 10 of the Delaware Code provides in part:

" [n]o action to recover damages for trespass, . . . no action based on a promise, no action based on a statute, and no action to recover damages caused by an injury unaccompanied with force or resulting indirectly from the act of the defendant shall be brought after the expiration of 3 years from the accruing of the cause of such action . . . "

Plaintiff urges that, however his claims be characterized, the three year period prescribed by this statute is the relevant one.

The defendants, on the other hand, characterize plaintiff's grievance either as an action "upon a claim for wages for work, labor or personal services performed", subject to a one year limitations period under section 8110 of Title 10 of the Delaware Code, or as an action to recover damages for "injury to personal property" barred after two years under section 8106A.

The Court fails to see how plaintiff's claims can be said to involve "injury to personal property" and believes that the Delaware Supreme Court has defined the scope of section 8110 in such a way as to preclude its application here.

In Goldman v. Braunstein's, Inc., 240 A.2d 577 (Del.Sup.Ct.1968), the court ruled that section 8110 was inapplicable to an employee's claim for damages based on his discharge before his one-year contract had expired. Section 8110, the court held, is confined to actions seeking recovery for services already performed. In contrast, a suit for breach of an employment contract "does not arise from services [already] perfomed, and is not a suit for the salary or bonus." Rather, the "recoverable" loss sustained arises "upon or after the termination of the employer-employee relationship." As such, the Court held, it comes within 10 Del.C. § 8106 covering actions based "on a promise."

While one may argue about whether plaintiff asserts "claims based on a promise," it seems clear that they are not claims "for wages, for work, labor, or personal services performed", and that they do come within the scope of the three-year statute.

## B. *Immunity*

In Fidtler v. Rundle, 497 F.2d 794 (3rd Cir. 1974), the Third Circuit distinguished between "official immunity", which is available to public officials who exercise "discretionary" functions, and the "defense of good faith and probable cause", which is also available to public officials performing "ministerial" duties. The court recognized that both of these doctrines are bars to damage claims which must be pleaded and proved by the official. See, also, Lasher v. Shafer, 460 F.2d 343 (3rd Cir. 1972); Carey v. White, 375 F.Supp. 1327 (D. Del.1974).

As this Court reads the *Fidtler* decision, the doctrine of immunity applies, despite allegations of malice or bad faith, whenever the challenged action of the officer has a substantial policy-making or judgmental aspect and the action is within the "outer perimeter of [the defendant-official's duties]." Elaborating on this "outer perimeter" requirement, the Third Circuit had earlier stated that "the immunity of an officer from damage liability is dependent not

**728**

upon the legality of his action but upon its having sufficient connection with his duties that the officer could reasonably believe his action authorized." [36] Plaintiff Gordenstein argues that Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), requires not only that the officer *could* reasonably have believed his action authorized but that he did *in fact* so believe—*i. e.*, that he acted in good faith. This is a plausible reading of *Scheuer,* though not a necessary one.[37]

The Court need not resolve the matter, however, because a decision on the immunity issue would be premature whichever standard is to be applied. The *Fidtler* court itself admonished that the immunity doctrine cannot be applied in a factual vacuum. Fidtler v. Rundle, *supra,* 497 F.2d at 801–802. See also Lasher v. Shafer, 460 F.2d 343 (3rd Cir. 1972). Whether an official has discretion in a given sphere of action and, if so, to what limits his discretion extends, are questions which require consideration of the sources, both formal and informal, of the officers' authority, the precise action taken or omitted, and the overall factual context in which the officer acted or failed to act. The complaint in this action provides an insufficient vehicle for determining the immunity issue.[38]

## CONCLUSION

The Court holds that plaintiff's complaint states a claim under Section 1983 against each defendant, including the University of Delaware, and that the Court has jurisdiction over each of these claims pursuant to 28 U.S.C. § 1343(3). The Court further holds that these claims are not barred by limitations and that a decision on defendants' entitlement to official immunity would be premature.

Submit order.

---

36. Johnson v. Alldredge, 488 F.2d 820, 826 (3rd Cir. 1973).

37. *Compare* Fidtler v. Rundle, *supra,* with Skehan v. Board of Trustees, *supra,* 501 F. 2d at 43 n. 8.

---

38. Since neither party has addressed the matter, I have assumed, without deciding, that the individual defendants may be entitled to official immunity despite the fact that the University is not a state agency for purposes of Section 1983.