## Branna Construction Corporation *v.* West Allegheny Joint School Authority, Appellant.

Argued March 19, 1968. Before MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Louis Vaira,* with him *John M. Shane,* for appellant.

*David B. Fawcett, Jr.,* with him *Charles E. Evans,* and *Dickie, McCamey & Chilcote,* for appellant.

*John A. Metz, Jr.,* with him *Jacob A. Markel, Seymour J. Schafer,* and *Metz, Cook, Hanna & Kelly,* and *Markel, Markel, Levenson & Fischer,* for appellee.

OPINION BY MR. JUSTICE COHEN, May 21, 1968:

These are appeals from judgments entered in the court below in favor of Branna Construction Corpora-

tion (Branna) against appellants, Celli-Flynn Architects and Engineers, and the West Allegheny Joint School Authority (Authority), in the amount of $50,-000.

Branna, as a result of being the successful bidder for the construction of a new high school building in West Allegheny, entered into a formal contract with the Authority on July 21, 1960, whereby Branna agreed to construct the new building for the sum of $1,268,000. The firm of Celli-Flynn had been retained under a separate agreement with the Authority to serve as architect and engineer for the construction project.

After completion of the contract, Branna instituted the present action of assumpsit against the Authority and Celli-Flynn, which drew the plans and specifications for the new building, alleging that it was entitled to receive extra compensation in the amount of $94,-416 for certain additional excavation work performed. The complaint alleged, inter alia, that immediately upon commencing the excavation of the property, Branna discovered that the test borings of the subsurface conditions as supplied in the plans and specifications attached to the contract were in fact inaccurate, misleading, and materially misrepresented the subsurface conditions to such an extent that Branna was compelled to suffer additional costs in order to perform the excavation work properly. It was further alleged that Branna had relied upon the test borings and that it did not have sufficient time to make its own independent investigation.

The Authority and Celli-Flynn then filed preliminary objections to the complaint in the nature of a motion for a more specific pleading. After the preliminary objections were denied, appellants filed an answer and "New Matter" setting forth certain alleged self-exonerating clauses contained in the con-

tract. Thereupon, they filed a motion for a judgment on the pleadings averring that Branna had no right of recovery because of the self-exonerating clauses. The motion was denied and an appeal was taken to this Court. These appeals were quashed on the basis that they were taken from an interlocutory order. *Branna Construction Corporation v. West Allegheny Joint School Authority*, 414 Pa. 251, 199 A. 2d 414 (1964). The case was subsequently tried and the jury returned a verdict of $50,000 in favor of Branna and against both appellants. After motions for judgments n.o.v. or a new trial were denied by the court below and judgment entered thereon, appellants took the instant appeals.

The first issue presented for our resolution is whether or not the self-exonerating clauses in the agreement between Branna, the general contractor, and the Authority preclude recovery by Branna. In this regard, the contract contained the following relevant paragraphs with reference to the test borings of the subsurface conditions:

" 'General Conditions' . . . Sub-Surface Soil Data. . . .

"(a)  If core test borings were made the results are indicated on the drawings. *No responsibility is assumed by the Owner or Architect for sub-surface conditions.* Where core test borings have been made these findings are recorded and reproduced on the contract drawings but *such information is given to the Contractor for guidance only.*

"(b)  Any *data* concerning sub-surface conditions which is based upon soundings, test pits or test borings, *has been obtained by the Owner for its own use only* in designing this project, and *bidders shall not rely on such data in estimating contract costs. Bidders shall make their own investigation* of existing sub-surface conditions, including the examination and evaluation of available core borings.

" 'General Conditions' . . . Excavation Requirements. . . .

"This Contract includes all excavations and grading necessary to complete the project on an 'Unclassified' basis including rock; the cost of such excavations being included in the total payment due the Contractor as called for in this Contract, the bid having been accepted by the Owner on that basis.

"(b)   Where core test borings have been made these findings are recorded and reproduced on the contract drawings; such information is given to the Contractor for Guidance only.

. . . .

". . . Excavating, Filling and Grading-Basis of Contract. . . .

"(4)   The excavation work shall be performed on an 'unclassified basis'; that is, *the removal of all material encountered including earth or rock formations, regardless of the type or hardness of such formations,* the cost of such excavations being included in the contract price at the time of bidding.

"Core Boring and Test Holes. . . .

"(5)   Core boring and test hole location plan with *log of drilling information is shown on drawings.* However, this information is not to be taken by the Contractor as a definite basis for the submission of his bid as he *will be held responsible for carrying out and completing all excavation work regardless of the formations encountered."*   (Emphasis supplied.)

Appellants strenuously urge that this contract language unequivocally demonstrates an intention that Branna should not and could not rely upon the test borings; that it was incumbent upon Branna to undertake its own investigation of the subsurface conditions and that the responsibility for any additional costs incurred rested solely on its shoulders.   The

court below rejected this argument on two grounds. Initially, the court took the position that since the contract by its terms failed to exclude from the contract the plans and specifications with respect to the subsurface conditions, the contractor was entitled to recover under the line of cases represented by *Pennsylvania Turnpike Commission v. Smith,* 350 Pa. 355, 39 A. 2d 139 (1944), and that the failure to exclude such information from the contractor distinguished the instant situation from the line of cases represented by *O'Neill Construction Company, Inc. v. Philadelphia,* 335 Pa. 359, 6 A. 2d 525 (1939). We cannot agree with the lower court's analysis of the applicability of the foregoing case authority.

In *Smith,* the plans and specifications submitted to the contractor for its bid indicated that the material to be excavated would consist almost entirely of loose earth and approximately 50,000 cubic yards of limestone. After the contractor commenced excavating, it was discovered that the subsurface consisted predominately of limestone rock. The contractor filed a claim for the additional expense incurred and our Court permitted recovery. However, the decision in *Smith* was predicated upon several factors, none of which exist here, namely: (1) that the contractor was compelled to rely upon the plans as to the subsurface conditions since it was virtually impossible to make a thorough and independent investigation of the conditions in the short time allotted between the receipt of the plans and the time for bidding; (2) the Turnpike Commission had knowledge that the subsurface was predominately rock and not soft loose earth as represented by the plans, and (3) the misrepresentations actually worked a constructive fraud upon the contractor. In contradistinction to the *Smith* case, the instant situation lacks any allegation or evidence ap-

pearing in the record that appellants knowingly or fraudulently misrepresented the test borings and, furthermore, the record does not indicate or even suggest that Branna lacked the necessary time in which to undertake its own investigation of the subsurface conditions. These material distinctions, in our view, dictate the conclusion that the line of cases represented by *Smith* are inapplicable to the present factual situation.

Appellants rely most heavily upon two cases, *O'Neill Construction Company, Inc. v. Philadelphia,* supra, and *Montgomery v. Philadelphia,* 391 Pa. 607, 139 A. 2d 347 (1958), both of which were distinguished by the court below on the basis that the contracts did not exclude from the terms of the contracts the reference to subsurface conditions. While the contracts in *O'Neill* and *Montgomery* did provide that "In no event is this information to be considered as part of the contract", we are of the opinion that the mere absence of such a provision does not necessarily permit a contractor to rely upon information contained in the plans and specifications. There is no necessity to require such "boiler plate" language to appear in every contract of this nature if the owner desires to disclaim liability for subsurface conditions. This contract should be considered as any other contract and general principles of contract law should be applied in order to ascertain the actual intent of the parties. With these basic principles in mind, we turn our attention again to the language employed in the contract.

The contract provides in essence that (1) no responsibility is assumed by the owner or architect for subsurface conditions; (2) the information concerning these conditions was obtained by the owner for its own use in designing the project; (3) bidders shall make

their own investigation of existing subsurface conditions; (4) the project was to be completed on an "unclassified" basis which in construction business parlance means that anything discovered by the contractor after the execution of the contract will be at the sole risk and responsibility of the contractor; (5) such information is given to the contractor for guidance only and (6) the contractor will be held responsible for carrying out and completing all excavation work regardless of the formations encountered. Viewing the contract as a whole, it is difficult to imagine in what way the Authority could have fashioned any stronger or clearer language indicating that Branna should not rely upon the test borings, and that if different subsurface conditions were encountered, Branna would be solely responsible to bear the increased financial burden. We therefore hold that in the absence of other provisions in the contract to the contrary, the self-exonerating clauses would be a sufficient manifestation of intent that Branna had no right to rely upon the subsurface conditions as respresented by the plans and specifications.

However, Branna cites another provision of the contract which it contends indicates that the parties contemplated extra compensation in the event that the subsurface conditions encountered during the course of the work materially differed from those in the specifications. The provision relied upon by Branna, Article 15, Section (e) of the General Construction Contract Agreement, reads in pertinent part as follows: "Should the Contractor encounter . . . subsurface conditions at the site materially differing from those shown on the Drawings or indicated in the Specifications, the attention of the Architect shall immediately be called to such conditions. . . . If the Architect finds that they so materially differ, he shall

promptly make such changes in the Drawings or Specifications as he may find necessary, and any adjustment in the Contract price or time, if justifiable, shall be made by means of a written order as provided herein."

There are two other provisions which appellants rely upon in support of their position that the contractor cannot recover in any instance. They essentially provide that no extra compensation will be forthcoming unless the contractor completely satisfies the architect that the added work was a result of conditions which the contractor *could not have investigated beforehand or foreseen the likelihood of their occurrence.* In addition, the contractor warranted that he had thoroughly examined the plans and specifications and familiarized itself with all the conditions existing at the construction site. Analyzing these provisions in conjunction with one another, we conclude that the parties intended that extra compensation would be awarded by the architect only in the event that the architect was fully convinced that the added excavation work was the result of circumstances and conditions beyond the control of the contractor and without fault on its part. The record in the court below fails to establish that the contractor did all that was required of it to ascertain the actual conditions of the subsurface. No investigation was made beforehand and as previously determined the contract specifically stated that the contractor could not rely upon the test borings. It cannot be said that the contractor through no fault of its own suffered the added burden with respect to the increased excavation work. The logical and rational import of Article 15, Section (e) is that the architect could, if justifiable, increase the price or extend the time for performance when situations arose (subsurface conditions materially differed)

through no fault of the contractor and when the contractor took all the required precautionary steps as outlined in the general construction contract agreement. Since the contractor (1) had no right to rely on the test borings and (2) failed to independently investigate the subsurface conditions as required by the contract, the architect and the owner were as a matter of law and as a matter of the proper interpretation of the contract, completely justified in refusing to reimburse the contractor for the extra costs incurred. For these reasons the court below erred in denying appellants' motions for judgments n.o.v.

Judgments reversed as to both parties and judgments n.o.v. entered.

Mr. Chief Justice BELL took no part in the consideration or decision of this case.