Michael Baker, Jr., Appellant, *v.* Commonwealth of Pennsylvania, Department of Transportation, Appellee.

Argued January 8, 1974, before President Judge Bowman and Judges Crumlish, Jr., Kramer, Wilkinson, Jr., Mencer, Rogers and Blatt.

*Judd N. Poffinberger, Jr.,* with him *T. Lawrence Palmer* and *Kirkpatrick, Lockhart, Johnson & Hutchison,* for appellant.

*Arthur H. Marateck,* Assistant Attorney General, with him *Robert W. Cunliffe,* Deputy Attorney General, and *Israel Packel,* Attorney General, for appellee.

Opinion by Judge Rogers, February 22, 1974:

Michael Baker, Jr., Inc., design engineers, have appealed from a judgment of the Board of Arbitration of Claims in favor of the Commonwealth in a suit to recover from the State the sum of $146,054.68 allegedly due for services performed under a written contract with the Department of Transportation. We affirm the Board.

In the negotiations for the contract with the Department of Transportation Baker was represented by an employe bearing the title of chief engineer, a Christian F. Eben. The work the Department sought to have accomplished and Baker wished to be engaged to perform was the final design of a portion of an interstate road known as I-84. The United States government by its Bureau of Public Roads had agreed to pay 90% of the costs of the road, including the cost of design. The Federal Bureau of Public Roads required that a lump sum fee for the design work be established by contract. Prior to negotiating with Baker, the Department of Transportation had obtained a preliminary design of the work from another engineering firm. This 50 page report, which was available to Baker's representative during negotiations, included a preliminary cost estimate for constructing the section in question of $12,435,145. That estimate multiplied by 3.45% was used by the parties to fix Baker's design fee of $429,012.50.

The written contract between Baker and the Department of Transportation contained the following provisions which are determinative of this case.

"5. Payment—

"(a) In payment for the survey, design, drawings, computations and estimates including all structures, the Engineer shall be paid a fee of four hundred and twenty-nine thousand and twelve dollars and fifty cents ($429,012.50).

. . . .

"6. The maximum cost, to the Department, for this Agreement shall not exceed the amount of $563,962.50.[1]

---

[1] The written contract required Baker to perform work in addition to design, including preparation of condemnation plans, soil surveys, borings and billboard restriction plans for a price of $154,950, the difference between $563,962.50 maximum cost and the

This maximum amount shall not be exceeded without the approval of the Department and the Bureau of Public Roads, in the form of a Supplemental Agreement hereto.

. . . .

"9. All sections of the specifications and special requirements attached are applicable and are binding as written except those herein deleted . . . . Section 3.16 [is] not applicable."

Section 3.16 of the specifications, last referred to, provides methods of ascertaining construction costs in contracts in which "[t]he Engineer's fees [are] on the basis of a percentage of construction cost[s]."

In doing the final design work Baker ascertained that the amount of $16,668,611[2] was a more accurate figure for estimated construction cost than the preliminary estimate of $12,435,145. This increase is attributed by Baker to miscalculations in the preliminary design of the amount of excavation, borrow and bridge length required to accomplish the work. The record is completely lacking in evidence that these items increased the cost to Baker of designing the road.

Baker twice importuned the Department of Transportation and the latter twice in Baker's behalf importuned the Federal Bureau of Roads to approve Baker's request that its fee be increased by the $146,054 difference between the contract price and the product of multiplying by 3.45% Baker's estimate of $16,668,611 for the cost of construction. This activity of the Department was not so good natured as might on superficial observation appear, since the State's share of the additional fee would have been $14,605.40 and the Federal share of $131,448.60. In any event, the Federal

---

$429,015.50 design cost. These additional items are not in question here.

[2] The actual cost when let to bid exceeded $18,000,000.

Bureau of Roads refused to approve any payment in excess of the contract maximum of $563,962.50.

The written contract contains two references to the cost estimate of $12,435,145, one merely a statement to that effect, the second in a table showing the breakdown of the maximum fee of $563,962.50, as follows:

"Design ($12,435,145 x 3.45) — $469,012.50."

Based upon these references, Baker would have us hold that the Department agreed to pay a fee of 3.45% times its estimate of costs. The contract plainly provides otherwise by the excerpts hereinbefore quoted.

The most recent expression of the applicable law appears in *R. F. Felte, Inc. v. White*, 451 Pa. 137, 143, 302 A. 2d 347, 351 (1973) : "In a written contract the intent of the parties is the writing itself and when the words are clear and unambiguous the intent is to be determined only from the express language of the agreement. East Crossroads Center, Inc. v. Mellon-Stuart Co., 416 Pa. 229, 205 A. 2d 865 (1965) ; Siciliano v. Misler, 399 Pa. 406, 160 A. 2d 422 (1960) ; Kennedy v. Erkman, 389 Pa. 651, 133 A. 2d 550 (1957) ; Atlantic Refining Co. v. Wyoming Nat'l Bank of Wilkes-Barre, 356 Pa. 226, 51 A. 2d 719 (1947) ; Commonwealth v. Nelson-Pedley Const. Co., 303 Pa. 174, 154 A. 383 (1931). 'When a written contract is clear and unequivocal its meaning must be determined by its contents alone. It speaks for itself and a meaning cannot be given to it other than that expressed. Where the intention of the parties is clear, there is no need to resort to extrinsic aids or evidence.' East Crossroads Center, Inc. v. Mellon-Stuart Co., supra at 230-31, 205 A. 2d at 866. Furthermore, this Court long ago emphasized that '[t]he parties have the right to make their own contract and it is not the function of this Court to rewrite it, or give it a construction in conflict with the accepted and plain meaning of the language used.' Hagarty v. William Akers, Jr. Co., 342 Pa. 236, 20 A. 2d 317 (1941)."

A further insurmountable obstacle to recovery under the contract as written is the failure of Baker and the Department to obtain the Bureau of Road's approval of a total cost "for this Agreement" of an amount in excess of $563,962.50. Mr. Eben testified that he fully understood when negotiating the contract that Baker could not get more than this amount without Federal approval.

Baker also argues that we should reform the contract because the preliminary estimate of cost provided by the Department and used to compute the lump sum fee was wrong. This estimate, Baker contends, was a material misrepresentation by the Department. It relies on *Pennsylvania Turnpike Commission v. Smith,* 350 Pa. 355, 39 A. 2d 139 (1944). In *Smith* the Pennsylvania Turnpike Commission, although possessed of information that subsurface conditions were predominantly rock, invited bids on plans and specifications for constructing a road which indicated that material to be excavated consisted principally of earth. The Commission's schedule did not afford bidders sufficient time to make their own investigation of subsoil conditions. The Supreme Court held that the misdescription of subsoil conditions in the Commission's plans and specifications was a constructive fraud upon bidders and that arbitrators had properly allowed compensation to the successful bidder for his added cost of excavating rock. The circumstances here are quite different. As Baker was fully aware, the Department, by Federal regulation, was compelled to fix a lump sum fee based upon an estimate of cost developed by a preliminary design report. The Department so far as this record reveals had no knowledge that that estimate was wrong and it permitted Baker access to the report. Nor is there evidence that Baker was subject to any limitation as to time for accepting or rejecting the contract as offered. Finally, as we have noted, there is no evidence here, as

there was in *Smith*, that the increased cost of the project produced an increase in Baker's cost for doing the design.

The Board of Arbitration of Claims' judgment is fully supported by fact and law.

Affirmed.