Commonwealth of Pennsylvania, Department of Transportation *v.* Buckley & Company, Inc., Appellant.

Argued December 1, 1975, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Joseph M. Martosella,* with him *Ned Stein,* for appellant.

*Arthur H. Marateck,* Assistant Attorney General, with him *Robert W. Cunliffe,* Deputy Attorney General, and *Robert P. Kane,* Attorney General, for appellee.

OPINION BY JUDGE ROGERS, January 16, 1976:

Buckley & Company, Inc. filed a complaint in the Board of Arbitration of Claims seeking damages for sums allegedly due and unpaid by the Commonwealth, acting by the Department of Transportation, on a road construction contract. The amount claimed by an amended complaint was $135,360, which was reduced by further amendment made at the hearing before the Board to $76,508.06. The Board denied any recovery and Buckley has appealed. Buckley's claim was without merit and we affirm.

The contract was advertised, bid and awarded on the unit price basis. The contract and the accompanying drawings showed that an estimated number of 5,463 timber piles totaling an estimated length of 165,685 lineal feet would be required to be driven. In fact, Buckley was required to drive 5,463 piles but their total length was 98,087.5 lineal feet rather than the estimated 165,685 feet. The unit price bid by Buckley was $2.00 per lineal foot. Buckley contends its cost per lineal foot was 65 cents greater than the $2.00 it bid because it actually drove 67,597.5 fewer lineal feet than the contract estimate.

The contract contained the following two pertinent provisions:

"1.2.4 INTERPRETATION OF APPROXIMATE ESTIMATE OF QUANTITIES—The bidder's attention is directed to the fact that the estimate of quantities of work to be done and/or materials to be furnished under these specifications, as shown on the proposal form, and in the contract is approximate and is given only as a basis of calculation upon which the award of the contract is to be made. The Department does not assume any responsibility that the quantities shall materialize strictly in the construction of the project, nor shall the contractor plead misunderstanding or deception because of such estimate

of quantities or of the character of the work, location, or other conditions pertaining thereto. The Department reserves the right to increase or decrease any or all of the above-mentioned quantities of work, or to omit any of them, as it may deem necessary, and such increase or decrease of the quantities given for any of the items shall not be considered as sufficient grounds for granting an increase in the unit prices bid, *expect as set forth in Section 1.9.1.*

. . . .

"1.9.1 MODIFICATION OF DRAWINGS BY WRITTEN AGREEMENT—The drawings herein referred to may be modified and changed from time to time, as agreed in writing between the Chief Engineer and the contractor in a manner not materially affecting the substance thereof, if such changes are necessary to carry out and complete more fully and perfectly the work agreed to be done and performed. Additional work involved in such changes shall be paid for at the contract unit price. *If such changes and modifications materially increase the unit cost of the work, the increased expense will be paid by the State,* except as provided in Sections 1.9.2. to 1.9.10 inclusive and Section 6.1.4(7). *If such modifications and changes decrease the unit cost of the work, the amount of said decrease may be retained or withheld by the State.* No consequent loss or anticipated profit on work not executed will be paid to the contractor." (Emphasis added.)

In order to recover, therefore, Buckley was required to show that it and the Chief Engineer had agreed in writing to changes and modifications in the drawings. The Board found that no such changes and modifications were made with reference to the timber piles, and it is clear that this was the case. The evidence relied on by Buckley as bringing it within the quoted contract terms was a letter from the District Engineer forwarding the

Final Certificate Computations, on which were recorded the estimated and actual number of lineal feet of piles driven. The letter in question which is dated October 22, 1973 contains the following two paragraphs:

"In accordance with Section 1.9.8 of the Specifications attached is a copy of the Final Certificate Computations, showing the itemized contract quantities, also additions and deductions thereto and the amount of Final Payment Due on your contract for Route LR. 1000 Sec. A-5, Philadelphia County.

"There is a net deduction of $54620.20 from the Original Contract amount of $8959628.86 making the Final Cost of the Contract $8905008.60. The sum of $8902946.46 has been paid to you on Previous Estimates, thus making a Final Payment due of $2062.20."

Buckley's response by letter dated October 30, 1973 is in pertinent part as follows:

"In reply to your letter of October 22, 1973 regarding 'Final Certificate Computations,' we hereby accept the final quantities as shown and the final payment of $2,062.20 for the contract work."[1]

It is too clear for argument that Final Certificate Computations are not changes and modifications of drawings required as the basis for a claim for increased expenses.

Buckley's further argument that the facts bring its claim within the holding of the familiar case of *Pennsylvania Turnpike Commission v. Smith*, 350 Pa. 355, 39 A.2d 139 (1944) is also without merit. There is no evidence here that the Department had information as to

___

1. Paragraph 8 of the contract provides: "It is also agreed and understood that acceptance of the final payment by the contractor shall be considered as a release in full of all claims against the Commonwealth of Pennsylvania, arising out of, or by reason of, the work done and materials furnished under this contract." The applicability of this provision in the light of this exchange of correspondence was not advanced as a defense by the Commonwealth.

subsoil conditions which it failed to disclose to bidders. Indeed, the evidence was that neither party could have had such information because buildings were erected on the site. Buckley executed an affidavit that in bidding it had not relied on any subsurface information furnished by the Department.

ORDER

AND NOW, this 16th day of January, 1976, it is ordered that the decision and order of the Board of Arbitration of Claims be and they hereby are affirmed.