Commonwealth of Pennsylvania, Department of Transportation, Petitioner *v.* Brayman Construction Co., Respondent.

Argued December 9, 1977, before Judges Wilkinson, Jr., Rogers and DiSalle, sitting as a panel of three.

*John T. Kalita, Jr.,* Assistant Attorney General, with him *Robert W. Cunliffe,* Deputy Attorney General, and *Robert P. Kane,* Attorney General, for petitioner.

*Victor R. Delle Donne,* with him *Owen B. McManus,* and *Baskin, Boreman, Wilner, Sachs, Gondelman & Craig,* for respondent.

Opinion by Judge DiSalle, February 3, 1978:

This petition for review was filed by the Commonwealth of Pennsylvania, Department of Transporta-

tion (Department), from an adverse decision rendered by the Board of Arbitration of Claims (Board).

Brayman Construction Company (Brayman) entered into a contract with the Department for the construction of a portion of Interstate-79. The total contract price was $4,430,471.20. Included in this contract was the relocation of a township road and the construction of a new arch to carry the relocated road over a channel.

Prior to the bidding on this particular contract, Brayman perused all the proposals, plans, and specifications regarding the project. Brayman also physically made an inspection of the site covered by the contract. While in the process of constructing the relocated road, Brayman discovered a pre-existing, reinforced concrete arch which Brayman contends was not designated on the Department's specifications and plans. The Department maintained that the cost of removing the existing arch should be borne by Brayman under its contractual responsibilities. Brayman completed the excavation of the old arch, but did so under protest.

The Department refused to pay Brayman for the cost of the removal of the arch, contending that it was covered in the quantities listed for excavation. Brayman contended that the item was not covered in the excavation quantities and filed a claim before the Board. After a comprehensive hearing, the Board entered judgment for Brayman and against the Department in the amount of $12,869.18.

At the hearing, the expert who calculated the bid for Brayman on this portion of the job stated that the arch was not taken into consideration when the job was bid because it did not specifically appear on the Department's documents. The Department's expert conceded that none of the drawings completely showed the concrete arch, its dimensions, or its makeup. He

pointed out, however, that the construction drawings contained reference lines to a wing wall in the area of the existing arch. The Department argues that a visual inspection of the site should have put Brayman on notice that the arch removal was covered in the quantities listed for excavation.

The Board, in its decision, concluded that the contract, documents, plans, and specifications were ambiguous as to the existence of the old arch and the necessity of removing the arch under the terms and conditions of the contract. The Board properly invoked the principle of law that where an ambiguity exists in the written contract, the ambiguity must be resolved against the party drafting the contract. *Hafer v. Schauer,* 429 Pa. 289, 239 A.2d 785 (1968). In this case the ambiguity was created by the Department.

The Department, however, contends that even if an ambiguity existed, it is not liable to Brayman because of the exculpatory language contained in the contract. The contract in question contained the standard exculpatory clause regarding examination of the site. By signing the contract, Brayman covenanted and warranted that it had examined the site and was fully aware of the subsurface material and conditions to be encountered; further, that its contract prices were based on its own independent examination and investigation of the site, subsurface materials, and conditions, and that it had not relied on subsurface information furnished to it by the Department.

In essence, the contractor admitted that it had examined the site prior to submitting the bid, that during examination of the site, its engineer saw the concrete wing wall in the area where the new arch was to be erected, that it realized that removal of the old arch was necessary in order to construct the new arch, and that it was aware that the drawings showed the presence of "something" in the area of the old arch.

A careful perusal of the record makes it readily apparent then that the contractor knew or should have known that the existing arch had to be removed before the new arch was constructed. This is not a situation where both parties to the construction contract were dealing with a latent condition. Even though there may have been an ambiguity in the plans and specifications as to the exact nature of the existing arch, Brayman's visual inspection did, in fact, reveal a concrete structure where the new structure was to be placed.

Our Supreme Court addressed itself to an analogous situation in *Burke v. Allegheny County*, 336 Pa. 411, 414, 9 A.2d 396, 398 (1939), where it stated:

> Under the bidding requirements, bidders were required to examine the location of the work and to determine, in their own way, the difficulties likely to be encountered in its prosecution. In the contract plaintiff declared that he had read each and every clause in the advertisement, instructions to bidders, schedule of items, specifications and articles of agreement, fully understood the meaning of the same, and that he had thoroughly examined the contract, plans and specifications, and the location of the proposed improvements, and fully understood the character of the work to be done under the contract. Plaintiff must be restricted in his recovery to the terms of the agreement which he signed: O'Neill Const. Co., Inc. v. Phila., 335 Pa. 359, 6 A. (2) 525.

Brayman admits that when it examined the site, it saw the protruding wing wall of the old arch. If Brayman was not certain as to the job requirements, it should have sought clarification of the situation from the Department. This it did not do. Instead, Brayman submitted its bid realizing that the removal of the existing arch was not covered by a special bid item. Thus, it

cannot be said that Brayman suffered the added burden of increased excavation work through no fault of its own. Brayman is bound by its contract.

Our scope of review in such cases is limited. We must affirm the order of the Board unless it is not in accordance with law or there is an absence of substantial evidence to support the findings of fact. *Penn-Jersey Contractors, Inc. v. General State Authority,* 12 Pa. Commonwealth Ct. 203, 315 A.2d 920 (1974). We find that certain basic principles of contract law were not considered by the Board, and we must reverse.

Parties have the right to make their own contract, and it is not the function of the courts to rewrite it or give it a construction in conflict with the plain meaning of the language utilized. *Baker v. Department of Transportation,* 12 Pa. Commonwealth Ct. 254, 315 A. 2d 669 (1974). The exculpatory clause in the contract provides that the bid prices are based on the contractor's examination of the site, and on the contractor's assurance that it has not relied on any subsurface information furnished to it by the Department. Brayman knew or should have known there was an unresolved problem with the removal of the existing arch after its on-site inspection. It should have sought clarification from the Department regarding the old structure or should have adjusted its bid to include a sum of money for the removal of the structure in the event it was not contained in the excavation quantities. Brayman did neither.

Brayman contends that this case is controlled by the holding in *Pennsylvania Turnpike Commission v. Smith,* 350 Pa. 355, 39 A.2d 139 (1944), which allowed the contractor to recover for additional expenditures. This case, however, is clearly distinguishable. In *Smith* the contractor was compelled to rely upon plans which the Turnpike Commission knowingly and substantially misrepresented, thereby creating a construc-

tive fraud upon the contractor. In fact, the Board of Arbitrators found that the Commission's plans had indicated that the subsurface was composed of loose earth, when its engineers knew that the material was predominantly solid rock.

The rule in *Burke, supra,* is controlling in this case. A dissatisfied contractor who has made an inadequate bid is not entitled to have the contract rewritten so as to obtain compensation over and above that provided for in the contract. Nor are we inclined to approve extra payment in situations where the contractor clearly was aware of the existence of the disputed work.

As a matter of law, Brayman is precluded from recovery, and the judgment of the Board is in error and must be reversed.

Judge ROGERS dissents.

ORDER

AND Now, this 3rd day of February, 1978, the order of the Board of Arbitration of Claims is hereby reversed, and the claim of Brayman Construction Company is denied.