Tri-County Excavating, Inc., Appellant *v.* Borough of Kingston, Appellee.

Argued April 6, 1979, before Judges CRUMLISH, JR., ROGERS and CRAIG, sitting as a panel of three.

Thomas P. Harlan, with him R. Hart Beaver, and Beaver, Wolf & Harlan, for appellant.

Frederick W. Alcaro, with him William J. Fahey, and Theodore L. Krohn, for appellee.

OPINION BY JUDGE CRUMLISH, JR., October 3, 1979:

The Luzerne County Common Pleas Court modified an arbitrator's award in favor of Tri-County Excavating, Inc. (Tri-County) upon petition by the Borough of Kingston. Tri-County claimed it was contractually entitled to reimbursement for allegedly unforeseen subsurface conditions encountered in connection with a sewer construction project, namely, unforeseen mine water, utility lines, and a storm main. The arbitrators awarded Tri-County $163,500.00 plus interest. The court below concluded that the arbitrators erred in awarding reimbursement for the mine water problem but found merit in the other two claims and reduced the award to $17,988.16. We conclude that the decision of the Common Pleas Court was correct as a matter of law.[1]

---

[1] The court below enjoyed jurisdiction pursuant to Section 11(d) of the Arbitration Act of 1927, Act of April 25, 1927, P.L. 381, as amended, 5 P.S. §171(d), and the scope of review utilized was in keeping with Pennsylvania Turnpike Commission v. Litton RCS, Inc., 20 Pa. Commonwealth Ct. 577, 342 A.2d 108 (1975).

Shortly after construction was begun, the sub-contractor experienced adverse water and soil problems requiring additional work and, of necessity, increasing costs.

Who is contractually responsible for the extra costs?

"Parties have the right to make their own contract, and it is not the function of the court to rewrite it or give it a construction in conflict with the plain meaning of the language used. . . . Courts must interpret contracts as written, and in construing a contract each and every part of it must be taken into consideration and be given effect; the intention of the parties must be ascertained from the entire instrument." *Commonwealth of Pennsylvania, Department of Transportation v. Acchioni and Canuso, Inc.*, 14 Pa. Commonwealth Ct. 596, 599, 324 A.2d 828, 830 (1974). (Citations omitted.)

Tri-County, in asserting its claim, relies entirely on Article 4.3 of the General Conditions which reads in pertinent part:

Unforeseen Subsurface Conditions:

4.3. The CONTRACTOR will promptly notify the OWNER and ENGINEER in writing of *any subsurface or latent physical conditions at the site differing materially from those indicated in the Contract Documents. . . .* If the ENGINEER finds that the results of such surveys or tests indicate subsurface or latent physical conditions differing significantly from those indicated in the Contract Documents, a Change Order shall be issued incorporating the necessary revisions. (Emphasis added.)

Tri-County argues that it was unaware of the adverse water problem, that an independent subsurface investigation was very expensive and impossible to obtain in the short time period prior to the prepara-

tion and submission of bids, and that a constructive fraud resulted when the Borough failed to include subsurface conditions information in the plans and specifications.

There is one important factual distinction which destroys the analogy to *Pennsylvania Turnpike Commission v. Smith*, 350 Pa. 355, 39 A.2d 139 (1944), which Tri-County advances in support of its constructive fraud theory. In *Smith* the contractor had to rely on plans which the Turnpike Commission's contractor knowingly and substantially misrepresented. While in that situation, constructive fraud might be found, in this case there were no misleading representations made by the Borough. *Department of Transportation v. Acchioni and Canuso, Inc., supra.*

The contract documents provide that the contractor shall remove any accumulated water; that it assumes full responsibility for familiarizing itself with the locality and any local condition that may affect the work; and that it warrants that its bid is based on actual field conditions.

It is clear to us that the parties intended that the contractor assume full responsibility for a subsurface investigation and equally clear that it warranted awareness of the actual conditions. In the record the president of Tri-County candidly admits that no subsurface investigation was ever attempted. In what we opine to be the controlling case of *Branna Construction Corp. v. West Allegheny Joint School Authority*, 430 Pa. 214, 242 A.2d 244 (1968), the Supreme Court concluded that the parties intended extra compensation where the added work was the result of conditions beyond the control of the contractor and without fault on its part. The contractor there could not absolve its fault and was charged with added cost burden. In effect, the contractor is legally required to take the precautionary steps outlined in the contract.

This duty is reinforced where no investigation is made and an experienced contractor is involved who had access to public documents describing the mine water levels in the project area.

As to the other claims, we agree with the learned trial judge that the record warrants the conclusion that their encounter was unforeseen.[2]

Accordingly, we

### ORDER

AND Now, this 3rd day of October, 1979, we affirm the order of the Court of Common Pleas of Luzerne County but remand the record to the Court of Common Pleas for the computation and award of interest, payable at the rate of six percent (6%) per annum, to Tri-County Excavating, Inc.

--------

[2] The Borough claims that Tri-County failed to comply with written notice requirements and that Tri-County is not the real party in interest and thus that any award is improper. We find no merit in these claims.