461 A.2d 765

**ACCHIONE AND CANUSO, INC., Appellant,**

**v.**

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, Appellee.**

Supreme Court of Pennsylvania.

Argued Jan. 25, 1983.

Decided April 25, 1983.

338

Marvin Comisky, Richard M. Rosenbleeth, Alan C. Gershenson, Philadelphia, for appellant.

George B. Wenick, Asst. Atty. Gen., Harrisburg, for appellee.

Before ROBERTS, C.J., and NIX, FLAHERTY, McDERMOTT, and ZAPPALA, JJ.

## OPINION

ZAPPALA, Justice.

This is an appeal from an Order of the Commonwealth Court reversing a Board of Claims award granted to appellant-construction company for increased costs incurred due to extra trenching work not included in the original contract but ordered subsequent to that contract's execution.

Facts relevant to the disposition of this appeal are summarized from the comprehensive findings made by the Board as follows:

Appellant and appellee entered into a contract on October 5, 1975 for highway improvements in Philadelphia County, Pennsylvania. Item 910–6000 of the contract called for 13,131 lineal feet (lf) of trenching which was to be let at a unit price per lineal foot.

This trenching consisted of excavating areas of grass, sidewalk, and highway. These respective areas involved different costs per lineal foot due to the varying degree of difficulty required to trench those areas. Because the contract item required only a unit price for all trenching, it was important to ascertain the exact area to be trenched so that the amount of each respective area could be calculated and averaged into one unit price.

From an inspection of the site and a take-off of the plans, DePaul, the subcontractor of appellant, calculated that 16,-

658 linear feet of trenching would be required to complete the job. This was 3,527 linear feet more than the bid specifications required. Due to this discrepancy, he contacted the consulting engineers for the project who directed DePaul to assume that 50% of the existing conduit would be reusable and thus would require no new trenching.

From this information, DePaul proceeded to calculate the cost for individual areas of trenching and from that the unit price as follows:

| Individual Areas | Totals |
|---|---|
| Cost for Earth .... 9,759 l.f. $\times$ $13 l.f. | $126,867 |
| Cost for Sidewalk .. 3,033 l.f. $\times$ $23 l.f. | 69,759 |
| Cost for Highway .. 3,866 l.f. $\times$ $52 l.f. | 201,032 |

$$\frac{(126,867) + (69,759) + (201,032)}{16,658} = \frac{397,658}{16,658} = \$23.87 \text{ Unit Price/l.f.}$$

Based on this calculation, DePaul entered a $24 lineal foot bid for the trenching. This bid was included in the contract bid which was subsequently accepted by the Department of Transportation (PennDOT).

Following the award of the contract to appellant, PennDOT ordered pull tests to determine the reusability of the existing conduit. These tests revealed that a substantial amount of the existing conduit could not be reused.

In December of 1974, PennDOT's engineers authorized an additional 17,433 linear feet of trenching, some of which had already been performed. This authorization, approved by the office of the Chief Engineer on January 6, 1975, did not categorize the amount of trenching to be performed in grass, sidewalk or highway areas. The reason given for this additional work order and its subsequent authorization was stated by Penn Dot's engineer as follows:

... This work is required due to the omission by the designer and the consultant in the plans and in the Contract of a contingency item. This item was planned to cover the installation of conduit where reusable conduit does not check out to be usable. The corresponding trenching item was also not revised accordingly. The complete item for trenching on the interconnect system was also omitted by the designer and the consultant.

As a result of the additional trenching authorized by the December 31, 1974 work order, increases in all trenching areas occurred, so that the final trenching totals were as follows: trenching in sidewalk increased to 3,393.00 lineal feet; trenching in roadway increased to 12,988.70 lineal feet; trenching in grass increased to 14,770.10 lineal feet. The total number of lineal feet to be trenched increased from 13,131 lineal feet to 31,151.80 lineal feet. The increase in the most expensive area of trenching, roadway, rose 336%. These increases had the effect of increasing the unit price $6.14 to $30.14 per lineal foot, based upon the original calculations.

Appellant did not become aware of the effect this extra trenching was having on the unit cost until late July of 1975, just prior to completion of the total project. It was at this time that they submitted a claim for extra compensation to Penn Dot. This claim was denied and appellant then filed his claim with the Board of Claims.

The Board, in awarding the extra compensation to appellant, found that the extra trenching materially changed the character of the work performed and also the cost to do that work. They also found that the increases resulted from appellant's reliance on plan specifications and oral representations made by appellee's engineers as to the amount of reusable conduit, and that these increases could not have been foreseen by appellant until most of the work was completed.

On appeal to the Commonwealth Court, the Court reversed the award of the board, holding that the board misapplied the rule of *Pa. Turnpike Commission v. Smith*, 350 Pa. 355, 39 A.2d 139 (1944) in finding constructive fraud on the part of PennDOT and further placed the burden of ascertaining the increased costs and negotiation for increased compensation on appellant in spite of the Board's finding that appellant could not ascertain such increases until the end of the job. *Pennsylvania Dept. of Trans. v. Acchione and Canuso, Inc.*, 55 Pa.Comwlth. 65, 423 A.2d 30 (1980).

A close reading of *Smith* indicates to us that the Board's application of the rule was valid and we therefore reverse the decision of the Commonwealth Court.

In *Smith,* this Court found constructive fraud where the Turnpike Commission failed to notify bidders of rock conditions known to it and different from those shown in the bidding documents. Smith, relying on those documents to prepare his bid, incurred additional expenses in completing the project when subsurface conditions were found to be much more difficult to excavate than the plans had shown. In allowing Smith to recover, this Court found that the bidding documents were positive statements upon which Smith had a right to rely, citing *Hollerbach v. U.S.,* 233 U.S. 165, 34 S.Ct. 553, 58 L.Ed. 898 (1914). *Hollerbach* involved a government contract to repair a certain dam in Kentucky. In it's bid documents, the government required bidders to examine the job site. The documents also contained a description of the dam site and the material backing the dam. In performing the contract work, the contractor found the backing material to be of a type more difficult to remove than that represented in the plans. There was no finding that the content of the actual backing material was known to the government at the time the bid documents were distributed. Rather, in allowing the contractor to recover, the U.S. Supreme Court stated:

We think this positive statement of the specifications must be taken as true and binding upon the government, and that upon it, rather then upon the claimants, must fall the loss resulting from such mistaken representations. We think it would be going quite too far to interpret the general language of the other paragraphs as requiring independent investigation of facts which the specifications furnished by the government as a basis of the contract left in no doubt. If the government wished to leave the matter open to the independent investigation of the claimants, it might easily have omitted the specification as to the character of the filling back of the dam. In its positive assertion of the nature of this much of the work it

made a representation upon which the claimants had a right to rely without an investigation to prove its falsity. *Id.* at 233 U.S. at 172, 34 S.Ct. at 556.

It should be noted that only one of the decisions this Court relied on in *Smith* contained facts indicating that the government had *actual* knowledge of the misrepresentations. However, this fact was not controlling. *Christie v. United States,* 237 U.S. 234, 35 S.Ct. 565, 59 L.Ed. 933 (1915).

While the facts of *Smith* were such that the Turnpike Commission knew of the falsity of the test boring data, the holding was not meant by this Court to be limited to those facts.

It is clear that the Commonwealth Court has misinterpreted our holding in *Smith,* insofar as that court has consistently refused to allow recovery unless evidence of actual knowledge of the misrepresentation was presented. *See, e.g., Pennsylvania Dept. of Trans. v. Acchione and Canuso, Inc., Supra; Central Penn Ind., Inc. v. Pennsylvania Dept. of Trans.,* 25 Pa.Cmwlth.Ct. 25, 358 A.2d 445 (1976); *Pennsylvania Department of Transportation v. Buckley & Co.,* 23 Pa.Cmwlth.Ct. 18, 350 A.2d 438 (1976); *Pennsylvania Dept. of Trans. v. Acchioni & Canuso, Inc.,* 14 Pa.Cmwlth.Ct. 596, 324 A.2d 828 (1974).

Based upon the *Smith* rationale, the critical factors to be reviewed in determining whether recovery is deemed appropriate are:

(1) Whether a positive representation of specifications or conditions relative to the work is made by the governmental agency letting the contract or its engineer.

(2) Whether this representation goes to a material specification in the contract.

(3) Whether the contractor, either by time or cost constraints, has no reasonable means of making an independent investigation of the conditions or representations.

(4) Whether these representations later prove to be false and/or misleading either due to actual misrepresentation on the part of the agency or its engineer *or, by*

*what amounts to a misrepresentation* through either gross mistake or arbitrary action on the part of the agency or its engineer.

(5) Whether, as a result of this misrepresentation, the contractor suffers financial harm due to his reliance on the misrepresentation in the bidding and performance of the contract.

Applying this rule to the instant case, we conclude, as did the Board of Claims, that appellant-contractor was justified in its reliance on PennDOT's engineer's representation that 50% of the conduit was reusable. This specification was uniquely within the purview of PennDOT, since an independent inspection by the contractor would require the testing of approximately 40 intersections with the resultant disruption of traffic; further, since this figure represented such a large quantity of the work to which no trenching would be required and given the requisite of a unit bid on this part of the work, it was understandable that the contractor assumed PennDOT was speaking from a position of knowledge as to this representation, and thus relied upon it in formulating its bid. As was stated in *Hollerbach,* supra, "In its positive assertion of the nature of *this much* of the work it made a representation upon which the claimants had a right to rely without an investigation to prove its falsity." (Emphasis added), *Hollerbach, supra,* 233 U.S. at 172, 34 S.Ct. at 556. It is axiomatic that to represent so much of the conduit as being reusable on no more than an educated guess is to be considered arbitrary and therefore actionable.

Since the Board found that the increased expenses incurred by appellant were a direct result of the reliance on that misrepresented bid specification, we hold that appellant is entitled to recover.

■ As to appellee's contention that appellant has failed to produce sufficient facts from which damages could be awarded, we disagree. This Court has consistently held that the law does not require proof in support of claims for damages to conform to the standard of mathematical exactness; if the facts afford a reasonably fair basis for calculat-

ing the amount to which plaintiff is entitled, such evidence cannot be regarded as legally insufficient to support a claim for damages. *Getz v. Freed,* 377 Pa. 480, 485, 105 A.2d 102 (1954); *Western Show Co., Inc. v. Mix,* 308 Pa. 215, 162 A. 667 (1932) *accord, Vizzini v. Ford Motor Co.,* 569 F.2d 754, 762–763 (3d Cir.1977).

The facts as found by the Board indicate that appellant calculated his damages by reformulating the unit price, substituting the actual trenching distances of each area for those given in the bid specifications. The respective price components for each area remained the same. It should be noted that at no time was this calculation in dispute by the parties. Thus, it is reasonable to assume that the unit price obtained through this calculation would have been the one submitted by appellant had the specifications been correctly represented. Since PennDOT, by accepting appellant's orig-inal bid, tacitly acknowledged its reasonableness, they can-not now be heard to complain of the unreasonableness of appellant's damages when the amount has been obtained merely by substituting the actual distances for those which were misrepresented.

We therefore affirm the Board of Claims' finding that the appellant's claim for damages afforded a reasonable basis for calculating loss and is therefore sufficient.

The Order of the Commonwealth Court is reversed, and the Order of the Board of Review is reinstated.

Nix and Flaherty, JJ., filed dissenting opinions.

LARSEN and HUTCHINSON, JJ., did not participate in the consideration or decision of this case.

NIX, Justice, dissenting.

I dissent. The majority's conclusion is based on a mis-reading of this Court's holding in *Pennsylvania Turnpike Commission v. Smith,* 350 Pa. 355, 39 A.2d 139 (1944), and fosters the erosion of both the competitive bidding process for public contracts and the binding effect of such contracts.

*Smith* clearly requires that, to permit recovery on the basis of constructive fraud, the misrepresentation must be "substantial and not mere inaccuracy or innocent mistake." *Id.*, 350 Pa. at 362, 39 A.2d at 142. As this Court explained in *Branna Construction Corp. v. West Allegheny Joint School Authority*, 430 Pa. 214, 219–20, 242 A.2d 244, 246 (1968):

> [T]he decision in *Smith* was predicated upon several factors, . . . (1) that the contractor was compelled to rely upon the plans as to the subsurface conditions since it was virtually impossible to make a thorough and independent investigation of the conditions in the short time allotted between the receipt of the plans and the time for bidding; (2) the Turnpike Commission had *knowledge* that the subsurface was predominantly rock and not soft loose earth as represented by the plans, and (3) the misrepresentations actually worked a constructive fraud upon the contractor. In contradistinction to the *Smith* case, the instant situation lacks any allegation that appellants *knowingly or fraudulently misrepresented* the test borings. . . . (Emphasis supplied.)

*See Montgomery v. Philadelphia*, 391 Pa. 607, 139 A.2d 347 (1958). Thus it is clear that recovery under *Smith* requires a showing that the defendant made a substantial misrepresentation with actual knowledge of its falsity or with reckless disregard for the truth.

Moreover, the Commonwealth Court has uniformly interpreted *Smith* as requiring proof that the misrepresentation was knowingly made. *H.B. Alexander & Son, Inc. v. Commonwealth, Dept. of General Services*, 65 Pa.Commw. 558, 443 A.2d 424 (1982); *J.E. Brenneman Co. v. Commonwealth, Dept. of Transportation*, 56 Pa.Commw. 210, 424 A.2d 592 (1981); *Tri-County Excavating, Inc. v. Borough of Kingston*, 46 Pa.Commw. 315, 407 A.2d 462 (1979); *Commonwealth, Dept. of Transportation v. Brayman Const. Co.*, 33 Pa. Commw. 485, 382 A.2d 767 (1978); *Central Penn Industries, Inc. v. Commonwealth, Dept. of Transportation*, 25 Pa. Commw. 25, 358 A.2d 445 (1976); *Commonwealth, Dept. of*

*Transportation v. Buckley & Co.,* 23 Pa.Commw. 18, 350 A.2d 438 (1976); *Commonwealth, Dept. of Highways v. S.J. Groves & Sons Co.,* 20 Pa.Commw. 526, 343 A.2d 72 (1975); *Commonwealth, Dept. of Transportation v. Acchioni & Canuso, Inc.,* 14 Pa.Commw. 596, 324 A.2d 828 (1974); *Baker v. Commonwealth, Dept. of Transportation,* 12 Pa.Commw. 254, 315 A.2d 669 (1974).

The facts in this case clearly fail to support a claim of constructive fraud under *Smith.* Appellant's subcontractor, Tony DePaul & Sons, Inc., had calculated that 16,658 linear feet of trenching would be required to complete the project, whereas PennDOT's bid specifications called for 13,131 linear feet. When DePaul contacted PennDOT's engineers concerning this discrepancy, he was informed that the engineers had been directed to *assume* that approximately half of the existing conduit would be reusable. Thus, DePaul was aware that PennDOT's figure was an "educated guess," not based upon a knowledge of actual subsurface conditions. It is equally apparent that PennDOT had no knowledge of the condition of the existing conduit. Further, DePaul proceeded to calculate the cost of trenching using its own estimate of 16,658 feet rather than Penn DOT's estimate. Thus, DePaul did not rely on the PennDOT engineers' statement in arriving at his unit price of $24.00, which formed a part of appellant's successful bid for the contract. Absent such reliance there can be no fraud. Thus, even under the majority's interpretation of *Smith,* which I reject, appellant is not entitled to recover.

For the foregoing reasons I would affirm the order of the Commonwealth Court.

FLAHERTY, Justice, dissenting.

I dissent. The opinion authored by Mr. Justice Zappala too broadly construes the concept of constructive fraud recognized by this Court in *Pennsylvania Turnpike Commission v. Smith,* 350 Pa. 355, 39 A.2d 139 (1944) (actual knowledge of misrepresentations present). In the instant case, there is simply no evidence that PennDOT knew that sub-

stantially more than half of the conduit was not reusable; hence, an inference of fraud has no factual basis. Appellant knew that the additional trenching would be paid for at the contract unit price unless an increase was negotiated when the additional work was ordered. By failing to seek such a price adjustment, appellant bore the risk of increased costs.