542 A.2d 618

McGinley Maintenance, Inc., Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued March 24, 1988, before Judges CRAIG and PALLADINO, and Senior Judge BARBIERI, sitting as a panel of three.

*Frank A. Conte,* for petitioner.

*Bruce G. Baron,* Assistant Counsel, for respondent.

OPINION BY JUDGE PALLADINO, June 6, 1988:

McGinley Maintenance, Inc. (Petitioner) appeals from an order of the Board of Claims (Board) denying Petitioner compensation under a contract for custodial services with the Commonwealth of Pennsylvania, Department of Public Welfare, Mayview State Hospital (Department). We affirm.

Petitioner entered into a contract with the Department whereby Petitioner was to perform certain custodial services at Mayview State Hospital from July 1, 1982 through May 30, 1983. The contract covered the Hospital's Temple Center I, Temple Center II, Hilltop Canteen, Forrester, and Medical Center. This contract consists of the Department's acceptance of Petitioner's March 1, 1982 bid proposal, which proposal incorporated the bid specifications of the Department.[1] Pertinent parts of the contract are as follows:

VIII. D.  This agreement may be cancelled by either party at any time, with or without cause, upon sixty days written notice.

. . .

XI. C.  Contractor shall be paid for actual units of service provided.

XIII.  Award will be made on an aggregate basis. *If one or more buildings are taken out of service the dollar amount bid on each will be deducted from the contract price during the time they are out of service*. If part of a building is taken out of service, the monthly charge for that building will be reduced by the percentage of square footage so removed. (Emphasis added.)

---

[1] The parties in this case entered into a stipulation as to the record to be filed because the original record was lost. The stipulated record contains a copy of Petitioner's March 1, 1982 bid proposal including the Department's specifications.

The parties subsequently entered into two renewal contracts. The second renewal contract included the language: "Contractor [Petitioner] will be reimbursed only for services/material actually accepted by the Department."[2]

On June 19, 1985, this renewal contract was amended to extend the contract for an additional three months. The amendment stated that Petitioner would provide custodial services for the Temple Center I, Center II, Hilltop Canteen, and Forrester buildings during the months of July, August, and September, 1985 at a contract price of $30,342.60. Of this amount, $9,266.40 was attributable to custodial services for the Temple Center I building.

In February or March of 1985, the Department decided to phase out the Temple Center I building. In March of 1985, the Department's custodial supervisor orally advised Petitioner's supervisor that the Temple Center I building would eventually be taken out of service. On June 28, 1985, the Temple Center I building was closed and locked until May 1986. Petitioner did no custodial work in the Temple Center I building during the months of July, August and September 1985.

The Department, on or about August 29, 1985, sent Petitioner a proposed amendment which called for a $9,266.40 decrease in the contract price because the Temple Center I building had been closed.[3] In response to this proposed amendment, Petitioner de-

---

[2] We are unable to determine whether the first renewal contract contained a similar provision because the record to which the parties stipulated does not include a copy of the first renewal contract.

[3] The sum of $9,266.40 was the cost of custodial services for Temple Center I for the period of July 1, 1985 through September 30, 1985. The Hospital's Temple Center I was closed on June 28, 1985.

manded payment for the months of July and August 1985. The Department made no attempt to satisfy Petitioner's demand for payment.

Petitioner filed a claim with the Board asserting that Article VIII of the contract required the Department to give Petitioner written notice 60 days prior to cancellation because the Department's proposed amendment was cancellation of part of the contract. The Board concluded that Article VIII of the contract was only applicable where there was a cancellation of the entire contract, and therefore Petitioner was not entitled to written notice nor to compensation under the contract for services which were not performed.

On appeal to this court,[4] Petitioner contends that the Board incorrectly interpreted the contract. Petitioner contends that the Department was required to give it 60 days written notice prior to closing the Temple Center I building. Petitioner maintains that since the Department did not properly cancel the part of the contract pertaining to the Temple Center I building, Petitioner is entitled to $9,266.40 compensation for the Temple Center I building.

It is not the function of the Board or the courts to rewrite a contract or to give a contract a construction in conflict with the plain meaning of the language used in the contract. *Department of Transportation v. Brayman Construction Co.,* 33 Pa. Commonwealth Ct. 485, 382 A.2d 767 (1978); *Department of Transportation v. Acchioni and Canuso, Inc.,* 14 Pa. Commonwealth Ct. 596, 324 A.2d 828 (1974). Where the words of a contract are clear and unambiguous, the intent of the par-

---

[4] Our scope of review is limited to determining whether the Board's order is in accordance with law and whether the Board's findings of fact are supported by substantial evidence. *Department of Transportation v. Semanderes,* 109 Pa. Commonwealth Ct. 505, 531 A.2d 815 (1987).

ties is to be determined solely from the express language of the instrument. *Avery v. Pennsylvania Labor Relations Board,* 97 Pa. Commonwealth Ct. 160, 509 A.2d 888 (1986).

In this case, article XI(C) of the contract clearly and unambiguously states that Petitioner will be compensated only for those custodial services which are actually performed. Article XIII of the contract makes it clear that if a building is taken out of service the amount ordinarily paid for custodial services for that building will be deducted from the contract price during the period the building is out of service. In this case, the Temple Center I building was out of service during July, August and September, 1985. Petitioner did no work in the building during this three month period. Thus, Petitioner is not entitled to any compensation for custodial services for the Temple Center I building for July, August and September, 1985. When Petitioner entered into this contract with the Department, it accepted the terms of article XIII of the contract which provides that no payment will be received for a building which closes.

Petitioner focuses on article VIII of the contract, which requires 60 days written notice prior to cancellation of the contract, and argues that the Department was required to give it 60 days written notice prior to closing the Temple Center I building. We have carefully reviewed the entire contract and disagree with Petitioner's interpretation of article VIII. Article VIII clearly refers to cancellation of the *entire* contract. If parties had intended for the closing of a building to constitute a partial cancellation of the contract requiring 60 days notice as Petitioner maintains, the language contained in article XIII of the contract would be meaningless. Such a result would be contrary to well established principles of contract law. In construing a contract, the

entire contract must be considered and all the contract's provisions should be given effect. *Acchioni*.

Accordingly, we affirm.

ORDER

AND NOW, June 6, 1988, the order of the Board of Claims in the above-captioned matter is affirmed.